COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-06-097-CV

ADOBE LAND CORPORATION; ADOBE APPELLANTS

CATTLE COMPANY (A GENERAL 

PARTNERSHIP); CHERRY CREEK FARMS 

(A GENERAL PARTNERSHIP); VANGUARD 

AG SERVICES, INC.; AND ADOBE IRRIGATION

AND AG SERVICES, L.L.C.

V.

GRIFFIN, L.L.C. APPELLEE

------------

FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

I.  Introduction

Appellants Adobe Land Corporation, Adobe Cattle Company (A General Partnership), Cherry Creek Farms (A General Partnership), Vanguard Ag Services, Inc., and Adobe Irrigation and Ag Services, L.L.C. (“Appellants”) appeal from the trial court’s grant of a no-evidence summary judgment in favor of Appellee Griffin, L.L.C. (“Griffin”).  Because the trial court abused its discretion in refusing to grant Appellants a spoliation presumption we reverse the trial court’s judgment and remand this case for further proceedings.

II.  Factual and Procedural Background

Griffin is a manufacturer of various crop protection chemicals including “Trilin,” a herbicide.  In early 2000, Appellants, farmers of approximately 3,200 acres of alfalfa in West Texas, hired Helena Chemical Company (“Helena”) to impregnate fertilizer with Trilin and apply the mixture to their alfalfa crops for the purposes of providing weed control in their fields.  According to Appellants, Helena obtained the Trilin from Robertson’s Bonded Warehouse, a Lubbock storage facility commonly used by vendors to store agricultural products, and Robertson’s Bonded Warehouse, in turn, obtained the Trilin directly from the manufacturer Griffin.  Helena then impregnated the fertilizer with the Trilin and applied the mixture to Appellants’ fields as requested.
(footnote: 1)  

In the months following the application, Appellants began to notice an abundance of weeds present throughout their fields and a decline in their alfalfa production.  Appellants voiced these concerns to Helena in June 2000 after the spring growing season produced diminishing crop yields.  Helena, in turn, notified Griffin regarding Appellants’ complaints, and, in response, representatives from both companies traveled to West Texas to inspect the fields.  Based on its observations, Griffin determined that the Trilin should have provided Appellants with better weed control, and had it done so, Appellants’ crop yield would not have been adversely affected.  Therefore, Griffin credited Appellants for their purchases of the Trilin under the terms of the product’s warranty in order to “satisfy them and take care of the - - problem.”   

However, Appellants continued to experience diminished alfalfa productivity throughout the remainder of the 2000 growing season.  Appellants reported that the plants lacked vigor and had an unnatural bluish-green color they had never seen before.  By early 2001, the loss of productivity from the fields became acutely severe and some of the plants began to die.  The fields eventually ceased to yield any meaningful production and all remaining plants died in August 2001.  

In June 2002, Appellants sued Griffin for negligence, products liability, and breach of warranty.  In their original petition, Appellants alleged that “the alfalfa has been eliminated by the defective Trilin supplied by Griffin” and that “[they] seek compensation for the lost crop that resulted from the use of the defective Trilin.”  In December 2002, Appellants sought to obtain documents from Griffin regarding any possible contamination of the Trilin, as well as any documents that demonstrated the chain of custody of the Trilin actually applied to their fields.  In response to each of these requests, Griffin stated that “[it] is currently attempting to locate responsive documents, and [that it] will produce them promptly when located.” 

The record also indicates that, as part of its standard operating procedure, Griffin had an internal policy that required its quality control personnel to retain composite samples of every batch of Trilin that the company manufactured for a period of three years following its production.  In accordance with this policy, Griffin would assign each batch of Trilin a unique identifying “lot number” at the time of its production.  Griffin employees would then take an eight ounce sample of each batch, record the corresponding “lot number” and other key information in an analytical log book, label the sample by “lot number,” and store it in a secured area specifically designated to house those samples.  The policy also provided that after the passage of the requisite three-year storage period, the samples “may be disposed of in accordance with [Griffin’s] waste disposal policy.”  [CR 753]

As discovery continued, Appellants sought to obtain, test, and analyze Griffin’s retained sample of the Trilin that Helena applied to their fields in February 2000.  However, Griffin replied that it could not accurately identify that particular sample and provide it to Appellants absent an identifying “lot number.”  Subsequent depositions eventually led Appellants to identify the alleged “lot number,
(footnote: 2)” which they, in turn, relayed to Griffin for the purposes of obtaining the corresponding sample.
(footnote: 3)  In February 2005, Griffin informed Appellants that the corresponding retained sample was no longer available, as it was “in all likelihood disposed of at the end of 2002” pursuant to Griffin’s three-year retention policy.
(footnote: 4)  This prompted Appellants to amend their petition to include additional claims of negligence against Griffin, as well as allegations of spoliation. 

In January 2006, Griffin filed a no-evidence motion for summary judgment claiming that Appellants had failed to produce any evidence that its product was defective or that the alleged defect was causally related to any of Appellants’ damages.
(footnote: 5)  In their response, Appellants sought a spoliation presumption based on Griffin’s disposal of the retained Trilin sample.  Appellants argued that without the retained sample, it was simply impossible for them to present any evidence on product defect or causation.  On the day of the hearing, Griffin filed several objections to various portions of Appellants’ summary judgment evidence, which the trial court sustained in part and overruled in part.  After considering the remaining evidence, the trial court granted a no-evidence summary judgment in favor of Griffin. 

III.  Issues Presented

In three issues, Appellants contend that the trial court erred by (1) granting a no-evidence summary judgment in favor of Griffin on grounds not asserted in its motion, (2) refusing to grant their request for a spoliation presumption, and (3) sustaining Griffin’s objection to their summary judgment evidence.  

IV.  Grounds for Summary Judgment

In their first issue, Appellants contend that the trial court erroneously granted Griffin a no-evidence summary judgment on grounds not expressly asserted in its motion.  Appellants argue that, although Griffin moved for summary judgment on no-evidence grounds relating to product defect and causation, Griffin failed to seek a no-evidence summary judgment concerning the spoliation claim asserted in their amended petition.  Therefore, Appellants conclude that it was improper for the trial court to grant a no-evidence summary judgment in favor of Griffin absent Griffin’s expressly seeking a no-evidence summary judgment on the spoliation claim.  We disagree.

Under rule 166a(i), “a [defendant] may move for summary judgment on the ground that there is no evidence of one or more essential elements of a 
claim 
. . . on which [the plaintiff has] the burden of proof at trial.  
See
 
Tex. R. Civ. P.
 166a(i) (emphasis added).  However, allegations of spoliation do not give rise to an independent cause of action under Texas law, 
Trevino v. Ortega
, 969 S.W.2d 950, 953 (Tex. 1998); 
Malone v. Foster
, 977 S.W.2d 562, 563 (Tex. 1998), and, accordingly, do not constitute 
claims
 subject to attack by way of a no-evidence motion for summary judgment.  Rather, spoliation is an evidentiary concept that is best remedied by the trial court within the context of the core lawsuit in which such allegations arise.  
See Trevino, 
969 S.W.2d at 953.
  In those cases, the non-spoliating party may attempt to remedy the situation by either moving for sanctions or requesting a presumption that the destroyed evidence would not have been favorable to the spoliator.  
Id. 
at 954 (Baker, J., concurring); 
see Brewer v. Dowling
, 862 S.W.2d 156, 159 (Tex. App.—Fort Worth 1993, writ denied) (discussing the presumptions that arise from the non-production of evidence).
  
While rule 166a(i) requires a motion to be specific in alleging a lack of evidence on an essential element of the plaintiff’s cause of action, it does not require the defendant to also attack evidentiary components, such as spoliation, that may ultimately be used to prove the challenged element.  
See In re Mohawk Rubber Co., 
982 S.W.2d 494, 497-98 (Tex. App.—Texarkana 1998, no pet.).  
Therefore, we conclude that Griffin was not required to seek a no-evidence summary judgment on Appellants’ spoliation allegations in order to properly obtain no-evidence summary judgment relief.  Thus, we overrule Appellants’ first issue.
  

V.  Spoliation Presumption

By way of their second issue, Appellants contend that they were entitled to a spoliation presumption against Griffin as a result of Griffin’s failure to preserve its retained sample of the Trilin that was applied to their alfalfa crop.  Appellants argue that since they were entitled to such a presumption, the trial court erred in granting Griffin’s no-evidence motion. 
   

A. Standard of Review

Because Appellants raised the issue of entitlement to a spoliation presumption in their response to the no-evidence summary judgment motion, and the trial court nonetheless granted a no-evidence summary judgment, we presume that the trial court considered and rejected Appellants’ request for a presumption.  
See Aguirre v. S. Tex. Blood & Tissue Ctr., 
2 S.W.3d 454, 457 (Tex. App.—San Antonio 1999, pet. denied) (op. on reh’g).  Thus, our review of the court’s grant of the no-evidence summary judgment is slightly modified.  
Id.
  First, we review the trial court’s implied rejection of the request for a spoliation presumption for an abuse of discretion. 
 Id.; see Wal-Mart Stores, Inc. v. Johnson, 
106 S.W.3d 718, 723 (Tex. 2003).
  Second, if we find no abuse of discretion, we proceed under the no-evidence standard of review to determine whether, without the presumption, more than a scintilla of evidence exists precluding summary judgment.  
Aguirre, 
2 S.W.3d at 457.

To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.  
Downer v. Aquamarine Operators, Inc.
, 701 S.W.2d 238, 241-42 (Tex. 1985), 
cert. denied
, 476 U.S. 1159 (1986).  Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.  
Id
.  Additionally, an abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence.  
In re Barber
, 982 S.W.2d 364, 365 (Tex. 1998) (orig. proceeding).  However, a trial court has no discretion in determining what the law is or in applying the law to the facts, even when the law is unsettled.  
In re Collins, 
172 S.W.3d 287, 292 (Tex. App.—Fort Worth 2005) (orig. proceeding).  Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion.  
Id.

B. Discussion

As explained in Justice Baker’s notable concurrence in 
Trevino, 
the inquiry as to whether a spoliation presumption is justified requires a court to 
consider (1) whether there was a duty to preserve evidence; (2) whether the alleged spoliator breached that duty; and (3) whether the spoliation prejudiced the non-spoliator’s ability to present its case or defense.  
Trevino, 
969 S.W.2d at 954-55 (Baker, J., concurring);
 Offshore Pipelines, Inc. v. Schooley,
 984 S.W.2d 654, 666 (Tex. App.–Houston [1st Dist.] 1998, no pet.)
.

1. Duty to Preserve Evidence

Before any failure to produce evidence may be viewed as discovery abuse, the opposing party must establish that the non-producing party had a duty to preserve the evidence in question. 
 Wal-Mart Stores, Inc.
, 106 S.W.3d at 722.  Such a duty arises only when a party knows or reasonably should know that there is a substantial chance that a claim will be filed and that evidence in its possession or control will be potentially relevant to that claim.  
See id. 
(citing 1 
Weinstein & Berger, Weinstein's Federal Evidence
 § 301.06 [4] at 301-28.3 (2d ed. 2003)) (“[T]here must be a sufficient foundational showing that the party who destroyed the evidence had notice both of the potential claim and of the evidence’s potential relevance” before a duty to preserve arises); 
Tex. Elec. Coop. v. Dillard, 
171 S.W.3d 201, 209 (Tex. App.—Tyler 2005, no pet.).  The duty is not so encompassing as to require a litigant to keep or retain every document in its possession.  
Trevino, 
969 S.W.2d at 957 (Baker, J., concurring).  However, it does require the party to preserve what it knows, or reasonably should know is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, or is the subject of a pending discovery sanction.  
Id.

In this case, Griffin argues that it had no duty to preserve the Trilin sample because the company did not consider it material evidence that was in any way relevant to the claims being asserted by Appellants at the time the sample was discarded.  
According to Griffin, it interpreted Appellants’ original petition, which served as the live pleading before the court at the time of the alleged spoliation, as asserting nothing more than allegations of inadequate weed control.  Griffin contends that it was unaware of Appellants’ position regarding the possible contamination of the Trilin at that time and asserts that it did not receive notice of the contamination claim until well after it disposed of the sample. 
 However, Griffin’s subjective interpretation of Appellants’ petition is not determinative.  
See Wal-Mart Stores, Inc., 
106 S.W.3d at 722.  Rather, we apply an objective standard in determining whether a party had notice of both the underlying claim and of the potential relevance of the evidence in question.  
See id.

Appellants filed the underlying lawsuit against Griffin in June 2002.
(footnote: 6)  This filing effectively served to provide Griffin with notice of the claims asserted in the petition and to trigger Griffin’s duty to preserve all evidence that it knew or reasonably should have known could be potentially relevant to those claims.
(footnote: 7)  
See Trevino, 
969 S.W.2d
 
at 955 (Baker, J., concurring) (noting that a party’s duty to preserve evidence unquestionably arises during pending litigation).  In their petition, Appellants expressly alleged that the Trilin applied to their fields was “defective” and that the herbicide proximately caused the elimination of their entire 3,200 acre alfalfa crop.  While the petition did not explicitly use the term “contamination,” it did put Griffin on notice that its product was potentially defective, that Appellants had allegedly suffered substantial damages from using the Trilin, and that the cause of the defect had not yet been determined.  Our review of the record also indicates that Griffin did not routinely test or analyze any of its Trilin, either pre- or post-production, for contaminants.
(footnote: 8)  Therefore, the only way Appellants could have possibly obtained information relating to the Trilin’s possible contamination in this case was to obtain the retained sample in question and conduct their own independent chemical analysis.
(footnote: 9)  Applying an objective standard, we conclude that Griffin knew or at least reasonably should have known of Appellants’ contamination claim and that its retained sample would be, at the very least, potentially relevant to the underlying litigation.  Thus, Griffin had a duty to preserve it.  
See Wal-Mart Stores, Inc.
, 106 S.W.3d at 722.
 

Alternatively, Griffin argues that it had no duty to preserve the sample at the time it was disposed of because Appellants had not yet provided it with the “lot number” of the Trilin that was applied to their fields.  Griffin contends that without that number it was unable to identify which of its retained Trilin samples corresponded with the batch of Trilin actually utilized on Appellants’ alfalfa in February 2000.  Therefore, Griffin asserts that even if it had a duty to preserve the sample, that duty did not arise until after the Appellants identified the relevant sample by “lot number,” which in this case did not occur until after the sample in question was already discarded.  We disagree.

As explained above, a party’s duty to preserve arises as soon as the party has notice that evidence in its possession or control may be relevant to the litigation.  
See Vela v. Wagner & Brown, Ltd.
, 203 S.W.3d 37, 58 (Tex. App.—San Antonio 2006, no pet.).  
In this case, it was the filing of the original petition that put Griffin on notice that at least one of its retained Trilin samples constituted material evidence relevant to the underlying contamination claims.  Although Appellants were unable to identify that
 
sample by “lot number” at the time they filed their petition, that filing, nevertheless, triggered Griffin’s duty to preserve all 
Trilin samples that were then in its possession and 
potentially 
relevant to the claims being asserted.
  
See Wal-Mart Stores, Inc.
, 106 S.W.3d at 722 (citing 1 
Weinstein & Berger, Weinstein's Federal Evidence
 § 301.06 [4] at 301-28.3 (recognizing that notice of evidence’s potential relevance triggers duty to preserve that evidence); 
Tex. Elec. Coop., 
171 S.W.3d at 209.  

The original petition was filed in June 2002.  Accordingly, under the terms of Griffin’s own sample retention policy, the company, at that time, would have had in its possession samples of all Trilin that it had manufactured over the preceding three years—1999, 2000, and 2001.  The petition also stated that Helena applied the allegedly defective Trilin to Appellants’ fields “in 2000.”  Thus, absent an identifying “lot number,” all of Griffin’s retained samples from 1999 and 2000 were potentially relevant to Appellants’ claims at that time and, therefore, fell within the scope of Griffin’s duty to preserve.
(footnote: 10)  Appellant’s inability to identify the specific “lot number” of the retained sample of Trilin actually applied to their fields did not relieve Griffin of its duty to preserve all 
potentially
 relevant Trilin samples.

2. Breach of Duty

After concluding that Griffin had a duty to preserve the sample, we must now determine whether Griffin breached that duty.  
See Trevino, 
969 S.W.2d at 957 (Baker, J., concurring).  
While parties need not take extraordinary measures to preserve evidence, they have a duty to exercise reasonable care in preserving potentially relevant evidence.  
See id.  
Therefore, in accordance with this duty, it is only logical that parties should be held accountable for either negligent or intentional spoliation.  
Id.  
This effectively places the burden of the prejudicial effects associated with the failure to preserve upon the culpable spoliating party rather than the innocent non-spoliating party.  
Id.  
However, a spoliator can defend against an assertion of negligent or intentional destruction by providing other explanations in an attempt to justify its failure to preserve evidence. 
 Id.  
Here, Griffin admits to destroying the sample in question.  Nevertheless, the company argues that because it discarded the sample in the ordinary course of its business, in accordance with its sample retention policy, it did not breach any duty it may have owed to Appellants.  However, when a party’s duty to preserve evidence arises before the destruction or when a policy is at odds with a duty to maintain records, the policy will not excuse the obligation to preserve.  
Id.  
In this case, Griffin’s duty to preserve arose well before it discarded the sample.  Therefore, Griffin’s failure to preserve cannot be justified simply because the evidence was destroyed pursuant to its corporate policies.  
See id.  
Thus, we conclude that Griffin breached its duty owed to Appellants by not preserving the retained Trilin sample once Appellants filed the underlying suit.

3. Prejudice

The final step of our inquiry focuses on whether Griffin’s spoliation prejudiced Appellants’ ability to present their case.  
Offshore Pipelines, Inc.,
 984 S.W.2d at 666 (
citing
 
Trevino, 
969 S.W.2d at 954-55 (Baker, J., concurring)).  
In making this determination, we look to a variety of circumstances such as the relevancy of the missing evidence and the availability of other evidence to take the place of the missing information. 
Trevino, 
969 S.W.2d 
at 958 (Baker, J., concurring).

The discarded sample clearly constituted material evidence that went to the very heart of Appellants’ claims, and the record reveals no other comparable evidence which would enable the parties to discover the true chemical composition of the allegedly defective Trilin.  Nevertheless, Griffin contends that we must affirm the trial court’s judgment because the court “could have concluded” that its disposal of the sample did not prejudice the Appellants.  Griffin cites us to 
Malone v. Foster, 
977 S.W.2d 562, and 
Cresthaven Nursing Residence v. Freeman, 
134 S.W.3d 214 (Tex. App.—Amarillo 2003, no pet.), in support of its contention that Appellants have failed to satisfy the prejudice threshold necessary to warrant a spoliation presumption.  However, in both of those cases, the court determined that the plaintiffs were not prejudiced by the defendants’ spoliation because the plaintiffs had other evidence available to them that contained the same information as the documents which were destroyed.  
See Malone, 
977 S.W.2d at 564 (available nursing report incorporated contents of destroyed incident report); 
Cresthaven Nursing Residence, 
134 S.W.3d at 227 (verbatim hand-written copy of missing nurse’s notes available to plaintiffs at trial).  In this case, Appellants do not have access to any other evidence which would provide them with the same information they sought to obtain by testing the retained sample.  Therefore, Griffin’s spoliation severely hindered Appellants’ ability to present their case, 
 Offshore Pipelines, Inc.
, 984 S.W.2d at 666
, and the trial court abused its discretion in not granting Appellants a spoliation presumption as a means of precluding a no-evidence summary judgment.
(footnote: 11)  
See Trevino, 
969 S.W.2d at 960 (Baker, J., concurring); 
Martinez v. Abbott Labs., 
146 S.W.3d 260, 269 (Tex. App.—Fort Worth 2004, pet. denied); 
Aguirre, 
2 S.W.3d at 457.  Accordingly, we sustain Appellants’ second issue.
(footnote: 12)
 VI.  Conclusion

Having determined that Appellants were entitled to a spoliation presumption and that the trial court erred in granting Griffin’s no-evidence  motion, we reverse the judgment in favor of Appellee and remand this case for further proceedings.  

ANNE GARDNER

JUSTICE

PANEL B: HOLMAN, GARDNER, and WALKER, JJ.

DELIVERED:  July 12, 2007

FOOTNOTES
1:
Appellants contend that Helena applied the Trilin to the fertilizer at a rate of two quarts per acre, which was in accordance with Griffin’s recommendation as dictated on its product’s label. 

2:
Appellants have identified that “lot number” as either 9-340-92 or 9-341-92.  James Bone, Griffin’s North American Vice President of Sales, stated in his deposition that the discrepancy between these two numbers is irrelevant as the last number in the sequence is the key number in identifying the “lot” while the other numbers simply refer to calendar dates.  Bone explained that, while both 9-340-92 and 9-341-92 came from “lot 92” one was produced on the 340
th
 day of 1999 while the other was produced on the 341
st
 day of that same year. 

3:
Griffin continues to dispute whether the Trilin applied to Appellant’s fields actually came from “lot 92.”  

4:
James Bone later stated that the sample may have been destroyed as early as July or August 2002.  However, Griffin has no records reflecting the actual date of disposal. 

5:
It is important to note that for the purposes of the motion Griffin conceded that it manufactured the Trilin that Helena applied to Appellants’ alfalfa fields. 

6:
Although the parties continue to disagree on exactly when Griffin disposed of the Trilin sample in question, that determination is not material to our duty analysis in this case because under either party’s version of the facts it remains undisputed that the sample was not discarded until some point after Appellants filed suit
.  

7:
We recognize that Griffin’s duty may have arisen prior to Appellants filing suit. 
 See Trevino, 
969 S.W.2d at 955-56 (Baker, J., concurring) (acknowledging potential prelitigation duty to preserve).  However, we express no opinion in that regard and only note that Griffin’s duty arose, at the latest, in June 2002.  
See id. 
at 955.  

8:
Although the trial court excluded this summary judgment evidence finding it irrelevant as it relates to the issue of defect and causation, the evidence may still be considered in connection with the spoliation issue.

9:
The record is devoid of any other evidence probative on the issue of Trilin contamination.   

10:
The record indicates that the 1999 and 2000 samples only took up “a couple of shelf sets” in the room in which Griffin housed them.  Therefore, the burden imposed on Griffin by requiring it to preserve these samples is minimal in this case.
 

11:
Griffin also argues that even if it spoliated evidence in this case, the presumption raised would only go to the defect element of Appellants’ cause of action.  Thus, according to Griffin, the record would remain absent of any evidence on causation thereby allowing the trial court’s summary judgment to remain undisturbed.  However, when the non-spoliating party is unable to prove its prima facie case without the destroyed evidence, a spoliation presumption will support that party’s assertions and serves as some evidence of the particular issue or issues that the destroyed evidence might have supported.  
Trevino, 
969 S.W.2d at 960 (Baker, J., concurring).  Here, the destroyed sample could have provided Appellants with some of the evidence they now lack on both defect and causation.  Therefore, the presumption in this case will enable Appellants to survive Griffin’s no-evidence motion for summary judgment.  
See id.  
However, we express no opinion as to the presumption’s effect in the context of a traditional summary judgment proceeding should Griffin choose to file a traditional summary judgment motion on remand.
 

12:
Because this issue is dispositive, we need not consider Appellants’ final issue.  
Tex. R. App. P.
 47.1.