IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 16, 2018 Session

## CARL LESTER BYRD, JR. v. APPALACHIAN ELECTRIC COOPERATIVE

**Appeal from the Circuit Court for Jefferson County**
**No. 24,369      Deborah C. Stevens, Judge[1]**

### No. E2017-01345-COA-R3-CV

The trial court dismissed the plaintiff's claim of outrageous conduct/intentional infliction of emotional distress filed against his employer because the plaintiff had previously filed a workers' compensation claim against the employer, seeking compensation for injuries arising out of the same incident. The plaintiff has appealed the dismissal of his claim. Discerning no reversible error, we affirm the trial court's judgment of dismissal. We decline Appalachian's request for an award of attorney's fees, determining that Mr. Byrd's appeal was not frivolous or taken solely for delay.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and CHARLES D. SUSANO, JR., J., joined.

Carl Lester Byrd, Jr., New Market, Tennessee, Pro Se.

W. Stuart Scott, Nashville, Tennessee, for the appellee, Appalachian Electric Cooperative.

### OPINION

#### I. Factual and Procedural Background

The plaintiff, Carl Lester Byrd, Jr., filed a complaint on June 17, 2015, in the Jefferson County Circuit Court ("trial court"), alleging that the defendant, Appalachian Electric Cooperative ("Appalachian") should be held liable for outrageous conduct and

---

[1] Sitting by designation.

intentional infliction of emotional distress. Mr. Byrd asserted that he had been employed by Appalachian since October 14, 1996. The incident giving rise to Mr. Byrd's complaint occurred on June 23, 2014.

In his complaint, Mr. Byrd alleged that when he reported to work on that date, he was instructed to meet with Appalachian's general manager, Gregory Williams. Upon meeting with Mr. Williams and Leslie Strader, Director of Human Resources for Appalachian, Mr. Byrd allegedly was asked about his recent marriage to Sherry Clifton, who was related to another Appalachian employee. Mr. Williams informed Mr. Byrd that his marriage violated Appalachian company policy and instructed Mr. Byrd that he needed to resign or face immediate termination. Mr. Byrd claimed that he spent the next three hours discussing the issue with Mr. Williams in the conference room and was denied the opportunity to call his wife.

Mr. Byrd averred that after three hours of discussion, Mr. Williams spoke with Appalachian's attorney, who reviewed the policy and determined that there was no violation. Mr. Byrd was then allowed to leave the conference room and return to work. Mr. Byrd averred that because of this "interrogation" by Mr. Williams, Mr. Byrd experienced chest pain, shortness of breath, anxiety, and other symptoms the following day, which necessitated a visit to the emergency room. Mr. Byrd stated that he had since been diagnosed with post-traumatic stress disorder and other maladies following this event and that he had been told by his medical providers not to return to work.

Mr. Byrd claimed that the actions of Mr. Williams constituted outrageous conduct and intentional infliction of emotional distress, which caused Mr. Byrd injury. Mr. Byrd sought compensatory and punitive damages in the total amount of $2,000,000.

On August 24, 2015, Appalachian filed a "Special Motion to Dismiss," contesting the jurisdiction of the trial court. Appalachian asserted that Mr. Byrd had three claims pending against Appalachian, including a workers' compensation claim for injuries allegedly arising from the same June 23, 2014 incident. Appalachian contended that pursuant to Tennessee Code Annotated § 50-6-108, Mr. Byrd was barred from filing a personal injury lawsuit based on the same injury claimed in his prior workers' compensation action. Appalachian thus posited that workers' compensation law provided Mr. Byrd's exclusive remedy for this alleged injury and that his tort action should be dismissed.

On September 11, 2015, Judge Richard Vance entered an order recusing himself from this matter. Subsequently, on October 20, 2015, Judge Ben Hooper entered an order recusing all of the judges of the Fourth Judicial District. Thereafter, on November 9,

2015, Justice Sharon Lee of the Tennessee Supreme Court entered an order designating Judge Deborah Stevens to preside over this matter.

On March 29, 2017, the trial court, with Judge Stevens sitting by designation, entered an order dismissing Mr. Byrd's complaint. In this order, the trial court stated in pertinent part:

> The Plaintiff alleges that the meeting that gave rise to his claim occurred "immediately upon his reporting to work on June 23, 2014" and the actions occurred in the conference room of the General Manager. The meeting occurred in the presence of the General Manager and the Director of Human [Resources] of the Defendant. The Plaintiff alleges that the meeting occurred because of an alleged workplace policy violation by Plaintiff and, as a result, the General Manager was asking that he resign or face termination.
>
> Every employer and employee subject to the state's Workers' Compensation laws, shall pay and accept compensation for injuries arising "primarily out of and in the course and scope of employment without regard to fault as a cause of the injury . . ." Tenn. Code Ann. § 50-6-103. An injury occurs in the course of employment, when it takes place within the period of the employment, at a place where the employee reasonably may be, and while the employee is fulfilling work duties or engaged in doing something incidental thereto. *Gooden v. Coors Technical Ceramic Co.*, 236 S.W.3d 351 (Tenn. 2007).
>
> While the determination of "in the course of employment" is generally a factual issue, the facts of this case are such that no reasonable minds could differ. The complaint states that Plaintiff had returned to work on that day and the complaint states that he was on the premises of his employer and he was in a workplace conference room for a meeting about his alleged violation of the defendant's workplace policy. While the Plaintiff was not engaged in the actual performance of his job duties at the time of the alleged incident, he was in a meeting incidental to his work duties which would include following company policy. As such, it is clear that the Plaintiff was in the course and scope of his employment and would be subject to the workers' compensation laws unless an exception applies.
>
> The courts in Tennessee have created an exception to the exclusivity rule for intentional torts committed by an employer. The "intent" necessary to avoid the exclusivity provision is discussed at length in the case of

3

*Valencia v. Freeland and Lemm Const. Co.*, 108 S.W.3d 239 (Tenn. 2003). In *Valencia*, an employee died in the course of his employment. The employer had, on prior occasions, been cited for failure to comply with safety regulations. The employee died while he was working in an open construction trench that collapsed and buried the employee alive. The employer was found to have violated safety regulations designed to ensure that trenches would not collapse. Prior to the employee's death, the employer had been specifically cited for failure to comply with safety regulations in the construction of trenches. In reviewing this case, the Supreme Court found that the safety violations of the employer resulted in the trench collapse, causing the death of the employee. The employee filed both a tort claim and a workers' compensation claim.

The employer in *Valencia*, filed a motion to dismiss based on the exclusivity of Workers' Compensation. The next of kin of the deceased employee argued that the employer's repeated violation of safety standards was "substantially certain" to cause death. *Valencia*, 108 S.W.3d at 240. The trial court found that the conduct was not proof of "actual intent" to injure the employee. The case was appealed and the Court of Appeals affirmed the trial court. When the case was appealed to the Supreme Court, the Court chose to address the issue of "whether the judicially-created exception to the exclusive remedy requirement, 'actual intent' should be broadly interpreted to include an employer's conduct that is 'substantially certain' to cause injury or death.["] *Id*. The Supreme Court concluded that "proof of actual intent goes beyond that sufficient to prove gross negligence or even criminal negligence." *Id*. at 242-243. The Court found that traditional tort law definitions of intent were not applicable to workers' compensation. "[T]he definition of actual intent is the actual intent to injure the employee." *Id*. at 243. Finally, the Court concluded that it could not extend the actual intent exception to conduct that made injuries substantially certain. In the *Valencia* case, the Court found that the amended complaint did not allege facts showing that the employer actually intended to injure the employee and therefore the trial court properly dismissed the action. *Id*.

This Court has carefully reviewed the complaint filed by the Plaintiff in this matter. Plaintiff alleges that as a "direct and proximate result of the three-hour interrogation regarding the Plaintiff's employment status, Plaintiff has developed a serious mental injury . . ." Plaintiff further alleges that AEC, through the actions of its general manager and director of human resources, engaged in conduct that was "intentional and reckless and that

4

such conduct was so outrageous that it cannot be tolerated by civilized society." The allegations in the subject complaint are grounded in the traditional definition of tort law for a claim of intentional infliction of emotional distress/outrageous conduct or a claim for punitive damages. Nowhere in the complaint does the Plaintiff assert facts that the employer acted with actual intent to cause him injury sufficient to remove this case from the exclusive remedy provision for workers' compensation within the guidelines set forth in *Valencia*. While Rule 8 of the Tennessee Rules of Civil Procedure allows for a liberal pleading standard, the complaint must state actual facts to support the claim. Courts are not required to accept "legal conclusions" couched as facts. *Riggs v. Burson*, 941 S.W.2d 44, 47-48 (Tenn. 1997). As such, the motion to dismiss should be granted.

(Internal citations to record omitted.) Thereafter, because neither party received notice of entry of the March 29, 2017 order, the trial court entered an agreed order amending the dismissal order's date of entry to June 7, 2017. Mr. Byrd timely filed a notice of appeal.

## II. Issues Presented

Although Mr. Byrd's appellate brief does not contain a statement of the issues, he clearly takes issue with the trial court's dismissal of his tort claim.[2] Appalachian has presented three issues for our review, which we have restated slightly:

1.      Whether the trial court erred by granting Appalachian's motion to dismiss.

2.      Whether Mr. Byrd has unfairly utilized his *pro se* status in this matter.

---

[2] On appeal, Mr. Byrd has filed a principal brief, consisting in part of a narrative-style "Statement of the Case" and "Statement of Facts," with neither section containing any citations to the appellate record. Mr. Byrd's brief also contains a "Summary of Argument," which essentially sets forth another recitation of the facts and includes arguments that are conclusory and unsupported by legal authority. Mr. Byrd's brief contains no statement of issues, table of contents, table of authorities, or any other sections required by Tennessee Rule of Appellate Procedure 27 or Tennessee Court of Appeals Rule 6. "Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue." *Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000), *perm. app. denied* (Tenn. Feb. 26, 2001). However, this Court can make the determination to suspend the requirements of the rules in a given case. *Id.* at 54. We therefore determine that the rules should be suspended in this matter so that we may address the merits of this appeal.

3.    Whether Mr. Byrd's appeal is frivolous such that Appalachian should be entitled to attorney's fees on appeal.

### III.  Standard of Review

When reviewing the trial court's dismissal of a complaint pursuant to Tennessee Rule of Civil Procedure 12, we must consider only the legal sufficiency of the complaint. *See Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002). As our Supreme Court has explained:

> A Rule 12.02(6) motion to dismiss only seeks to determine whether the pleadings state a claim upon which relief can be granted. Such a motion challenges the legal sufficiency of the complaint, not the strength of the plaintiff's proof, and, therefore, matters outside the pleadings should not be considered in deciding whether to grant the motion. In reviewing a motion to dismiss, the appellate court must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences. It is well-settled that a complaint should not be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief. Great specificity in the pleadings is ordinarily not required to survive a motion to dismiss; it is enough that the complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." *White v. Revco Disc. Drug Ctrs., Inc.*, 33 S.W.3d 713, 718 (Tenn. 2000) (citing Tenn. R. Civ. P. 8.01).

*Id.* (other internal citations omitted).

In reviewing pleadings, we "must give effect to the substance, rather than the form or terminology of a pleading." *Stewart v. Schofield*, 368 S.W.3d 457, 463 (Tenn. 2012) (citing *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 104 (Tenn. 2010)). We note also that pleadings "prepared by pro se litigants untrained in the law should be measured by less stringent standards than those applied to pleadings prepared by lawyers." *Stewart*, 368 S.W.3d at 462 (citing *Carter v. Bell*, 279 S.W.3d 560, 568 (Tenn. 2009); *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003); *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003)). Parties proceeding without benefit of counsel are "entitled to fair and equal treatment by the courts," but we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *See Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

IV. Propriety of Dismissal

On appeal, Mr. Byrd takes issue with the trial court's dismissal of his claim pursuant to Tennessee Rule of Civil Procedure 12. Appalachian contends that the dismissal was proper based on the exclusivity provision contained within the workers' compensation statutory scheme, which is codified at Tennessee Code Annotated § 50-6-108(a) (2014). This statute provides in pertinent part:

> The rights and remedies granted to an employee subject to this chapter, on account of personal injury or death by accident, including a minor whether lawfully or unlawfully employed, shall exclude all other rights and remedies of the employee, the employee's personal representative, dependents or next of kin, at common law or otherwise, on account of the injury or death.

Our Supreme Court has interpreted this statutory section as mandating that workers' compensation be considered "the exclusive remedy for an employee who is injured during the course and scope of his employment, meaning the employee is precluded from seeking tort damages for the injury." *See Valencia v. Freeland & Lemm Constr. Co.,* 108 S.W.3d 239, 242 (Tenn. 2003) (citing *Liberty Mut. Ins. Co. v. Stevenson,* 368 S.W.2d 760 (1963)). The High Court recognized, however, that an exception to this rule exists when the employer commits an intentional tort against the employee. *See Valencia*, 108 S.W.3d at 242; *see also Rodgers v. GCA Servs. Grp., Inc.*, No. W2012-01173-COA-R3-CV, 2013 WL 543828, at \*4 (Tenn. Ct. App. Feb. 13, 2013) (reiterating that workers' compensation law is the exclusive remedy for an employee injured during the course and scope of her employment unless the employee can show that the employer intended to actually injure her). "The theoretical basis for this exception is that the employer cannot allege an accident when he has intentionally committed the act." *Rodgers*, 2013 WL 543828, at \*4.

In order for the exception to apply, the employee must be able to prove that the employer acted with "actual intent" to injure the employee. *See Valencia*, 108 S.W.3d at 242. As this Court has further explained:

> Cases applying the "actual intent" requirement illustrate that this is a "narrow exception" to the exclusive remedy provision of the workers' compensation act. *Coltraine v. Fluor Daniel Facility Servs. Co.,* No. 01A01-9309-CV-00419, 1994 WL 279964, at \*2 (Tenn. Ct. App. W.S. Jun. 22, 1994). Our Supreme Court was asked to expand the scope of the exception, to include a broader definition of "actual intent," in *Valencia v. Freeland & Lemm Constr. Co.,* 108 S.W.3d 239, 240 (Tenn. 2003). In that

7

case, a construction worker was working in an open construction trench, which collapsed and buried him alive, causing his death. *Id.* at 241. Safety regulations required that companies using construction trenches either slope the sides of the trenches or use "trench-boxes" to ensure that the trenches did not collapse, but this employer did neither, although trench boxes were available and on-site. The employer had been cited twice for violating these regulations *before* the accident at issue, but in spite of the citations, it continued to construct trenches that were neither sloped nor reinforced. The employer also failed to provide a stairway, ladder, ramp or other safe means of egress from the trench, which was another violation of safety standards. The collapse that killed the worker was "likely" a result of these safety violations. The worker's next of kin filed a tort suit against the employer, asserting claims for intentional misrepresentation, negligence, strict liability, wrongful death and assault. The complaint alleged that the employer "acted with the 'actual intent' to injure [the worker]." *Id.* Nevertheless, the trial court granted the employer's motion to dismiss the tort claims, finding that although the complaint "indicated that the employer's conduct was 'substantially certain' to cause death, . . . the employer's conduct was not indicative of an 'actual intent' to injure [the worker]." *Id.* On appeal to the Supreme Court, the plaintiffs argued that "actual intent" should be broadly interpreted to include an employer's conduct that was "substantially certain" to cause injury or death, but the Court disagreed. The Court explained the reason for the "seemingly strict" rule requiring "actual intent" to injure:

> The Workers' Compensation Law takes away from the employee his common law rights and gives him others, on the guarantee that these substituted rights shall be generously awarded, both for foregoing his common law rights and in consideration of the obligations of his employer to keep his employee from becoming a public charge. The legislature has made the rights of the employee and the employer the exclusive remedy. Those who accept benefits under an act of this kind must likewise take the burdens.

*Id.* at 243 (quoting *King* [*v. Ross Coal Co., Inc.,*] 684 S.W.2d [617,] 619 [(Tenn. Ct. App. 1984)]) (citations omitted). The Court also explained the parameters of the "actual intent" requirement and the Court's reasons for rejecting the broad interpretation suggested by Plaintiffs:

8

The court in *Mize* explained the reason for this exception as:

> Since the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, the common law liability of the employer cannot be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of *general intentional injury* . . . . Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, wilfully and unlawfully violating a safety statute, this still falls short of the kind of *actual intention* to injure that robs the injury of accidental character. [King,] 684 S.W.2d at 619.

*Mize* [*v. Conagra, Inc.*]*,* 734 S.W.2d [334,] 336 [(Tenn. Ct. App. 1987)] (alteration in original). Further, proof of actual intent goes beyond that sufficient to prove gross negligence or even criminal negligence. *Gonzales v. Alman Constr. Co.,* 857 S.W.2d 42, 45 (Tenn. Ct. App. 1993)[.]

Plaintiff contends that public policy requires us to hold that when an employer acts in a manner substantially certain to cause death or injury it acts intentionally and such action falls within the intentional tort exception. While the traditional definition of intent used in tort law denotes the tortfeasor's desire to cause the consequences of his or her actions or the belief that the consequences are substantially certain to result from those actions, *Hodges v. S.C. Toof & Co.,* 833 S.W.2d 896, 901 (Tenn. 1992), that definition is not applicable in workers' compensation cases. *Gonzales,* 857 S.W.2d at 45. Rather, the definition of actual intent is the actual intent to injure the employee. *King,* 684 S.W.2d at 619.

9

. . . .

> We would radically depart from precedent were we to hold that an employer is exposed to tort liability if its conduct made injury substantially certain. This we cannot do. The statute at issue here, as judicially interpreted, mandates that the Workers' Compensation Law provides the exclusive remedies for all injuries occurring to an employee by way of accident during the course of and in the scope of employment, unless "actual intent" is alleged. This is the majority rule. *See* 6 *Larson's Workers' Compensation Law* § 103.03 (2001).

> *Id.* at 242-243. The *Valencia* Court ultimately held that "workers' compensation is an employee's exclusive remedy unless the employee can show that the employer actually intended to injure the employee. Proof of gross or criminal negligence is insufficient in this regard." *Id.* at 243. Applying these principles to the complaint filed on behalf of the deceased construction worker, the Court held that the trial court properly granted the employer's motion to dismiss, despite the fact that the complaint alleged that the employer "acted with the 'actual intent' to injure [the worker]," because, according to the Court, "the amended complaint [did] not allege facts showing that the employer actually intended to injure the employee." *Id.* (emphasis added).

*Rodgers*, 2013 WL 543828, at *4-6 (footnote omitted). In *Rodgers*, the plaintiffs alleged that the decedent had been intentionally and recklessly exposed to harmful mold by her employer, resulting in her death. *See id*. at *6. This Court affirmed the trial court's dismissal of the claim based on the exclusivity of the decedent's workers' compensation remedy, determining that the plaintiffs had failed to allege facts demonstrating an actual intent of the employer to injure the decedent employee. *See id*. at *9.

This Court further examined the issue of "actual intent" in *John Doe v. Walgreens Co.*, No. W2009-02235-COA-R3-CV, 2010 WL 4823212, at *9 (Tenn. Ct. App. Nov. 24, 2010), wherein the plaintiff employee alleged that she was injured when other employees accessed her prescription history in the company database without any medical or legal justification and were able to confirm her non-disclosed, HIV-positive status therefrom. Those employees then discussed the plaintiff's medical status with other employees and with the plaintiff's fiancé. This Court analyzed these facts pursuant to the "actual intent" test from *Valencia*, stating:

Appellees argue that the Does' Complaint fails to specify that Appellees' actual intent was to injure Ms. Doe. We note that at no point in their Complaint, do the Does allege that the injuries occurred "by accident." Tenn. Code Ann. § 50-6-102(12). Rather, the Complaint clearly avers that the injury (i.e., the dissemination of Ms. Doe's HIV status, and the direct fallout therefrom) occurred as a result of Ms. Ghoston "deliberately access[ing] Walgreens' database," and as a result of Dr. Saxton's telephone call to Ms. Doe's fiancé. The Does aver that both of these actions were made "without medical or legal justification, and without [] being job related or a business necessity." As noted above, in reviewing a trial court's ruling on a motion to dismiss based on Rule 12.02(6), we must liberally construe the pleadings, presuming all factual allegations are true and drawing all reasonable inferences in favor of the complainant. *See Tigg* [*v. Pirelli Tire Corp.*]*,* 232 S.W.3d [28,] 31 [(Tenn. 2007)]; *see also Kincaid v. South Trust Bank,* 221 S.W.3d 32, 37 (Tenn. Ct. App. 2006). Based upon the foregoing factual allegations, we can reasonably infer that the alleged injuries arose from the deliberate acts of Dr. Saxton and Ms. Ghoston and not as a result of any accidental discovery or dissemination of Ms. Doe's prescription records. Further, because these deliberate acts lacked any medical, legal, business, or job related justification, it is reasonable to infer that they were made with the actual intent to injure the Appellants.

*John Doe*, 2010 WL 4823212, at *9. Therefore, in *John Doe*, actual intent to injure was inferred from the nature of the co-employee's acts and the lack of justification for same. *Id*. This Court ultimately concluded, however, that the plaintiff's injuries arose because she was a customer of Walgreen's rather than in the course of her employment at Walgreen's, such that the workers' compensation statutes would not apply. *Id*. at *11.

In the case at bar, Mr. Byrd generally alleged that Appalachian's agents engaged in "intentional and reckless" conduct with regard to certain actions taken on the date in question, but he did not allege facts showing that these agents actually intended that he be injured by their actions. *See Valencia*, 108 S.W.3d at 243. Moreover, according to Mr. Byrd's complaint, the actions taken by his supervisors were related to an alleged violation of company policy, establishing that the agents possessed a business- or job-related justification for their actions. As such, it would be inappropriate to infer actual intent to injure in this situation. *See, e.g., John Doe*, 2010 WL 4823212, at *9. We therefore affirm the trial court's dismissal of Mr. Byrd's claims based on the exclusivity of his workers' compensation remedy.

11

## V.  Mr. Byrd's *Pro Se* Status

Appalachian asserts that Mr. Byrd has "improperly tried to manipulate the court system" in order to attack Appalachian.  Appalachian further argues that Mr. Byrd's baseless claims should not be excused by his *pro se* status.  Appalachian appears to utilize this argument as a segue into its next issue regarding frivolous appeal.  We will, therefore, address this issue in the following section.

## VI.  Frivolous Appeal

Appalachian asserts that this appeal is frivolous because the law regarding workers' compensation is well settled and Mr. Byrd maintains no reasonable chance of success in this Court.  Appalachian thus contends that this Court should award damages to it pursuant to Tennessee Code Annotated § 27-1-122 (2017), which provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

We recognize that Mr. Byrd is a *pro se* litigant and respect his decision to proceed self-represented.  With regard to self-represented litigants, this Court has explained that "[p]ro *se* litigants who invoke the complex and sometimes technical procedures of the courts assume a very heavy burden." *Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988), *perm. app. denied* (Tenn. Jan. 3, 1989).  Having thoroughly reviewed Mr. Byrd's pleadings and the law applicable to this matter, we determine that this appeal was not frivolous or taken solely for delay.  We therefore decline to award attorney's fees to Appalachian.

## VII.  Conclusion

For the foregoing reasons, we affirm the trial court's dismissal of Mr. Byrd's claim.  We decline to award attorney's fees to Appalachian.  This case is remanded to the trial court for collection of costs assessed below.  Costs on appeal are assessed to the appellant, Carl Lester Byrd, Jr.

_____
THOMAS R. FRIERSON, II, JUDGE