Opinion filed September 29, 2022



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00016-CV

_____

**MARIA MONTOYA, INDIVIDUALLY, AND AS REPRESENTATIVE OF THE ESTATE OF JAIME MONTOYA, SR.; JAIME MONTOYA, JR.; AND JAVIER MONTOYA, Appellants**

**V.**

**RSP PERMIAN, LLC; RSP PERMIAN, INC.; AND PEPE LE'PEW OILFIELD RENTAL, INC., Appellees**

**On Appeal from the 118th District Court**
**Martin County, Texas**
**Trial Court Cause No. 7485**

## M E M O R A N D U M   O P I N I O N

Appellants Maria Montoya, Jaime Montoya, Jr., and Javier Montoya are the survivors of the decedent, Jaime Montoya, Sr. Appellants filed suit against Appellees, RSP Permian, LLC; RSP Permian, Inc. (collectively RSP Permian); and

Pepe Le'Pew Oilfield Rental, Inc., alleging that decedent died as a result of inhaling hydrogen sulfide gas and that his death was attributable to Appellees' negligence. Decedent was an employee of Pepe Le'Pew Oilfield Rental working at RSP Permian's wellsite in Martin County at the time of his death. Pepe Le'Pew Oilfield Rental and RSP Permian filed separate motions for summary judgment, which the trial court granted. Appellants challenge the summary judgments in two issues. We affirm.

*Background Facts*

In May 2018, decedent was working at RSP Permian's Johnson Ranch wellsite No. 1022MS in Martin County. RSP Permian's consultant, Don Frank Thomas, stated in his deposition that various contractors were performing work at the wellsite. Decedent was there on behalf of Pepe Le'Pew Oilfield Rental to operate a pump and tank on behalf of his employer. Thomas observed decedent working at the wellsite upon Thomas's arrival at the well. Thomas stated that decedent was "hooking up a hose to one of his connections." Thomas remained at the wellsite for approximately fifteen minutes before going to another wellsite. At the time that Thomas left, decedent was finished with the task that he was doing and was waiting for a crew from War Horse Services to arrive.

Thomas estimated that he remained away from the wellsite for fifteen to twenty minutes. Upon his return, Thomas found decedent "slumped over" on the concrete pad. Thomas, who had worked in the past as a nurse, started CPR on decedent when he could not find a pulse. Appellants contend that decedent died as a result of inhaling hydrogen sulfide gas at the wellsite. They asserted numerous allegations of negligence against Appellees; each allegation was predicated on the contention that decedent's cause of death was hydrogen sulfide inhalation.

*Analysis*

Appellants assert in their first issue that the trial court erred by granting Appellees' motions for summary judgment. Decedent's employer, Pepe Le'Pew Oilfield Rental, filed a no-evidence motion for summary judgment asserting that Appellants had no evidence of proximate cause because there was no evidence that decedent died as a result of hydrogen sulfide gas at the wellsite. RSP Permian also filed a no-evidence motion for summary judgment. In addition to asserting that Appellants had no evidence of proximate cause, RSP Permian also asserted that Appellants had no evidence that it owed decedent any duty.

Appellants filed a single response to both motions for summary judgment. They included within their response the contention that spoliation of evidence occurred in this case. They assert the following matters as constituting spoliation of evidence: the hydrogen sulfide monitor provided to Appellants by the funeral home was not the same one that decedent was wearing at the time of his death; Thomas moved decedent's body from where he originally found it; and Thomas and a representative of Pepe Le'Pew Oilfield Rental influenced the justice of the peace to not perform an autopsy on decedent. Appellants asserted in their responses to the motions for summary judgment that the alleged spoliation of evidence hampered their ability to present their claims. Thus, Appellants essentially assert that the alleged spoliation of evidence precluded summary judgment.

"The spoliation of evidence is a serious issue." *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 16 (Tex. 2014). "[S]poliation is an evidentiary concept rather than a separate cause of action." *Id.* at 18. Thus, the trial court, rather than the jury, "must determine whether a party spoliated evidence and, if so, impose the appropriate remedy." *Id.* at 20. By granting the motions for summary judgment, the trial court implicitly denied Appellants' requested relief for the alleged spoliation of

3

evidence. *See Gregg v. Walgreen Co.*, 625 S.W.3d 636, 640 (Tex. App.—Houston [14th Dist.] 2021, no pet.).

We review the trial court's denial of a remedy for an allegation of spoliation of evidence for an abuse of discretion. *Id.* (citing *Brookshire Bros., Ltd.*, 438 S.W.3d at 27); *Adobe Land Corp. v. Griffin, L.L.C.*, 236 S.W.3d 351, 357 (Tex. App.—Fort Worth 2007, pet. denied) (citing *Wal–Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 723 (Tex. 2003); *Aguirre v. S. Tex. Blood & Tissue Ctr.*, 2 S.W.3d 454, 457 (Tex. App.—San Antonio 1999, pet. denied) (op. on reh'g)). If we find no abuse of discretion on the denial of the spoliation contention, we proceed to review the propriety of the summary judgment based upon the summary judgment evidence submitted by the parties. *See Adobe Land Corp.*, 236 S.W.3d at 357 (citing *Aguirre*, 2 S.W.3d at 457).

We first address the contention that Thomas moved decedent's body at the wellsite.[1] As previously noted, Thomas began performing CPR on decedent when he found him at the wellsite. Thomas's efforts to revive decedent can hardly be characterized as the spoliation of evidence. With respect to the allegation that the hydrogen sulfide monitor given to Appellants after decedent's death was not the monitor that he was wearing, this is a disputed fact issue for which the trial court did not abuse its discretion in resolving against Appellants. Lastly, RSP Permian submitted deposition testimony from the justice of the peace wherein she testified: "No one influenced me to not do the autopsy." Accordingly, the trial court also did not abuse its discretion by implicitly determining that Appellees did not cause the justice of the peace to not order an autopsy. Thus, the record does not demonstrate

---

[1]For the purposes of our review, we have not differentiated the acts of RSP Permian's representatives from those of the representatives of Pepe Le'Pew Oilfield Rental in resolving the alleged spoliation of evidence.

that the trial court abused its discretion by denying a remedy for the alleged spoliation of evidence in this case.

We review the trial court's grant of summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). When the trial court's order does not specify the grounds for its summary judgment, we will affirm the summary judgment if any of the theories are meritorious. *Knott*, 128 S.W.3d at 216.

After an adequate time for discovery, a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). We review a no-evidence motion for summary judgment under the same legal sufficiency standard as a directed verdict. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). Under this standard, the nonmovant has the burden to produce more than a scintilla of evidence to support each challenged element of its claims. *Id.* Evidence is no more than a scintilla if it is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). In reviewing no-evidence summary judgments, we consider the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the movant. *Merriman*, 407 S.W.3d at 248.

We first address the no-evidence motion for summary judgment filed by Pepe Le'Pew Oilfield Rental, which challenged the existence of proximate cause. Proximate cause has two elements: cause in fact and foreseeability. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 122 (Tex. 2009). Pepe Le'Pew Oilfield Rental alleged that there is no evidence that

5

decedent died as a result of hydrogen sulfide gas. Thus, Pepe Le'Pew Oilfield Rental's motion for summary judgment is directed at the element of cause in fact.

Cause in fact requires a showing that the act or omission was a substantial factor in bringing about the injury and without which harm would not have occurred. *HMC Hotel Props. II Ltd. P'ship v. Keystone–Tex. Prop. Holding Corp.*, 439 S.W.3d 910, 913 (Tex. 2014). "Cause in fact is essentially but-for causation." *Ryder Integrated Logistics, Inc. v. Fayette Cnty.*, 453 S.W.3d 922, 929 (Tex. 2015). Pepe Le'Pew Oilfield Rental contends that its alleged negligent acts and omissions concerning hydrogen sulfide could not be a cause in fact of decedent's death if there is no evidence that his death was caused by hydrogen sulfide gas.

Appellants have not provided any summary judgment evidence that decedent died as a result of hydrogen sulfide gas inhalation. As noted previously, an autopsy of decedent was not performed on decedent at the time of death. The justice of the peace determined that decedent died of natural causes. Decedent's family members retained Dr. Thomas Parsons, a forensic pathologist, to perform a "private autopsy" of the decedent more than thirty days after decedent had been embalmed and buried. Dr. Parsons testified by deposition that testing a body for hydrogen sulfide poisoning must be performed soon after death.

Dr. Parsons testified that nothing in his examination of decedent led him "down that path" to believe that decedent died as a result of hydrogen sulfide exposure. He opined that a factor in determining if hydrogen sulfide exposure occurred is as follows:

> [O]ther people at the scene being sick and exposed to high levels of hydrogen sulfide[.] You know, cases are very common where they see someone go down, a responder goes into the same area to do the rescue, they succumb immediately to the effects of hydrogen sulfide, and, you know, their monitors start beeping and so forth.

Furthermore, Dr. Parsons observed areas of significant stenosis in decedent's coronary arteries (up to seventy-five percent in some areas) as well as severe blockage at the opening of the aorta and the cusps of the aortic valve—indications of significant arteriosclerotic cardiovascular disease. He also observed that decedent had "a very large heart," which can lead to sudden cardiac death.

Thomas testified that the well was shut-in when decedent was working at the wellsite and that the purpose of shutting it in was to prevent gas flow from the well. He further testified that he did not smell hydrogen sulfide at the wellsite at any time and that his hydrogen sulfide monitor never went off. Thomas also stated that decedent's hydrogen sulfide monitor was not going off when Thomas found him and that no one's hydrogen sulfide monitor went off when they attempted to revive decedent. Thomas further testified that when the work at the wellsite was eventually completed a few days later, no hydrogen sulfide was detected.

Appellants direct our attention to the fact that the Occupational Safety and Health Administration (OSHA) cited Pepe Le'Pew Oilfield Rental for a "serious" violation by not providing adequate training to employees for the hazards of hydrogen sulfide. The citation referenced the date and location of decedent's death. Appellants contend that OSHA would not have cited Pepe Le'Pew Oilfield Rental for a serious violation unless there "is a substantial probability that death or serious physical harm could result." *See* 29 U.S.C. § 666(k). However, OSHA findings and citations are neither relevant nor admissible on the issue of common law negligence. *Hill v. Consol. Concepts, Inc.*, No. 14-05-00345-CV, 2006 WL 2506403, at *4–6 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (mem. op.). Moreover, the OSHA citation did not determine that decedent died as a result of hydrogen sulfide. OSHA documentation submitted as summary judgment evidence by Appellants indicated that OSHA concluded that the cause of death was "undetermined."

7

Appellants also contend that summary judgment evidence that Thomas assisted decedent in breaking loose a connection at the wellsite is evidence of cause in fact because it was a substantial factor in bringing about decedent's death. We disagree. As noted previously, there is no evidence that decedent suffered hydrogen sulfide poisoning or that his death was caused by hydrogen sulfide. In the absence of evidence of a causal link between hydrogen sulfide and decedent's death, there is no evidence of cause in fact to support Appellants' negligence claims against Pepe Le'Pew Oilfield Rental. Thus, the trial court did not err in granting Pepe Le'Pew Oilfield Rental's no-evidence motion for summary judgment.

RSP Permian's no-evidence motion for summary judgment also alleged that Appellants had no evidence of proximate cause. For the same reason that Pepe Le'Pew Oilfield Rental was entitled to a no-evidence motion for summary judgment, RSP Permian was also entitled to a no-evidence motion for summary judgment.[2] We overrule Appellants' first issue.

Appellants' second issue concerns the trial court's rulings on RSP Permian's objections to Appellants' summary judgment evidence. We considered Appellants' excluded summary judgment evidence in addressing the no-evidence motions for summary judgment. Because we have determined that Appellees were entitled to summary judgment based on all of the summary judgment evidence submitted by Appellants, we do not reach Appellants' second issue. *See* TEX. R. APP. P. 47.1.

---

[2]Because of our determination that RSP Permian was entitled to summary judgment on the issue of proximate cause, we do not reach the remaining grounds contained in RSP Permian's no-evidence motion for summary judgment. *See* TEX. R. APP. P. 47.1.

*This Court's Ruling*

We affirm the judgments of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


September 29, 2022

Panel consists of: Bailey, C.J.,
Trotter, J., and Wright, S.C.J.[3]

Williams, J., not participating.

---

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.