**Opinion issued July 13, 2023**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-21-00512-CV

————————————

### LAURA MICHELE MADDOCK, Appellant

### V.

### A & C CAST, INC. D/B/A FACILITY SERVICES UNLIMITED AND BUC-EE'S, LTD., Appellees

---

**On Appeal from the 157th District Court
Harris County, Texas
Trial Court Case No. 2020-02301**

---

## MEMORANDUM OPINION

This is a slip-and-fall case. Appellant slipped and fell on a handicap ramp located at the entrance of one of Buc-ee's, Ltd.'s ("Buc-ee's") stores in Cypress, Texas. She sued Appellees Buc-ee's and A&C Cast, Inc. d/b/a/ Facility Services

Unlimited ("Facility Services"), an entity that provides maintenance and management services to Buc-ee's, for premises liability seeking to recover damages for injuries she claims she sustained as a result of the fall. Appellees filed motions for summary judgment on Appellant's premises liability claim. Following a hearing on the motions, the trial court granted summary judgment in favor of Appellees.

In three issues, Appellant contends the trial court erred in granting summary judgment in favor of Appellees and in denying her request for a spoliation presumption. In her first and second issues, Appellant contends the trial court erred because she presented sufficient evidence raising a fact issue over whether Buc-ee's and Facility Services had constructive knowledge of the alleged dangerous condition at Buc-ee's Cypress store precluding summary judgment. In her third issue, Appellant argues the trial court abused its discretion by refusing to grant a spoliation presumption in her favor.

We affirm.

## Background

Buc-ee's owns and operates several convenience stores in Texas, including a store in Cypress, Texas. Facility Services provides maintenance services for Buc-ee's stores throughout Texas, including the one in Cypress ("Cypress Store"). In 2014, Buc-ee's requested that Facility Services remove the paint from all wheelchair ramps at its stores and replace the paint with a specific color of stain. Facility

2

Services performed the work using an ADA-compliant stain in the color selected by Buc-ee's. Facility Services reapplied the stain periodically, including at Buc-ee's Cypress Store in May 2018.

On the morning of October 15, 2018, Appellant Laura Michele Maddock ("Maddock") stopped at Buc-ee's Cypress Store on her way to work. Maddock walked up the ADA handicap ramp at the entrance of the store and walked inside the store where she bought a Diet Coke. As she exited the store to return to her car, Maddock alleges she slipped and fell on the handicap ramp located at the store's entrance, injuring her knee. According to Maddock, when she exited the Cypress Store, it was drizzling lightly outside. Maddock was taken by ambulance to a nearby hospital.

Three days later, Maddock's husband went to the Cypress Store to inform the store's General Manager about Maddock's injuries. At that time, Maddock's husband told the General Manager that Maddock was considering pursuing a claim against Buc-ee's. The General Manager referred Maddock's husband to Buc-ee's Claims Department. That same day, at Buc-ee's direction, Facility Services power washed the ADA ramp at the Cypress Store and removed the paint stain.

Maddock sued Buc-ee's and Facility Services for premises liability. In her petition, Maddock alleged that Buc-ee's and Facility Services (1) created a condition on the premises that posed an unreasonably dangerous condition to visitors, (2) knew

3

or, in the exercise of ordinary care, should have known that the substance used on the ADA ramp was unsafe and created an unreasonably dangerous condition on the premises, and (3) failed to remedy or correct the condition and failed to warn patrons, including Maddock, of the condition. Maddock alleged that Buc-ee's and Facility Services' negligence proximately caused her injuries.

Following the completion of discovery, Buc-ee's filed a no-evidence motion for summary judgment on Maddock's claim ("Buc-ee's Motion"). In its Motion, Buc-ee's argued there was no evidence, and Maddock failed to produce a scintilla of probative evidence (1) of the existence of a condition which posed an unreasonable risk of harm, (2) that Buc-ee's knew or reasonably should have known of the condition, and (3) that Buc-ee's failed to exercise ordinary care to protect Maddock from the danger by failing to warn her adequately of the condition and making the condition reasonably safe. In support of its Motion, Buc-ee's attached Maddock's first amended petition and request for disclosures, Buc-ee's original answer, Maddock's deposition transcript and accompanying exhibits, and video footage from its Cypress Store.

Several days later, Facility Services filed a traditional and no-evidence motion for summary judgment on Maddock's claim ("Facility's Motion"). In its combined Motion, Facility Services argued that Maddock's claim failed as a matter of law because (1) the alleged condition was not unreasonably dangerous and did not create

4

an unreasonable risk of harm, (2) Facility Services had no actual or constructive knowledge of the alleged dangerous condition, and (3) Maddock had no evidence of either. In support of its Motion, Facility Services attached Maddock's interrogatory answers, excerpts from Maddock's deposition transcript, and the sworn affidavit of its Co-Owner and President Chris Salsedo ("Salsedo"). In his affidavit, Salsedo testified:

> I have been personally involved in the services provided to the Buc-ee's Store #32 (Cypress, TX)—the store location where Plaintiff fell (the "Premises"). In 2014 Buc-ee's asked me to remove the paint on all of the wheelchair ramps (at all/various Buc-ee's locations) and [Facility Services] applied an ADA-compliant stain that matched the stain color requested by Buc-ee's at the Premises.

> Specifically, on April 27, 2015, Facility Services applied the H&C Colortop Water-Based Solid Color Concrete Solutions—the ADA-compliant stain—to the ramp at issue at the Premises (the "Ramp").

> At the time of the application, I personally spoke to the workers who applied the stain to the Ramp. The stain was correctly applied and was fully compliant with ADA regulations. Moreover, the purpose of that specific stain was to prevent slick surfaces and prevent slip-and-falls.

> [Facility Services] has applied this same ADA-compliant stain to thousands of handicap ramps throughout Texas.

> I am personally familiar with ADA compliance standards through my experience at [Facility Services] and 19+ years working in the field of commercial management and maintenance services.

> Since approximately 2013, [Facility Services] has provided monthly maintenance and ADA-compliance services for Buc-ee's stores throughout Texas, which includes: parking lot painting and

5

striping, wheelchair ramp staining, pressure washing and canopy cleaning.

. . . .

FSU is not aware of any falls attributable to the stain on the Ramp or at any other Buc-ee's location (with the same stain). [Facility Services] was never made aware of any complaints or injuries related to the Ramp or the stain.

This stain has been routinely used on all wheelchair ramps at Buc-ee's stores since approximately 2014 and has been applied to at least 29 Buc-ee's locations. Facility Services employees have not reported slipperiness of the Ramp or at any other location while performing pressure-washing and other services.

It is my understanding the incident involving Ms. Maddock occurred on October 15, 2018 at approximately 7:30 a.m. (the "Accident"). Facility Services was not at the Premises at that time.

Prior to the Accident, which occurred on October 15, 2018, [Facility Services ] was last at the Premises on September 13, 2018, whereas Facility Services performed the monthly pressure-washing services. Facility Services did not service any of the wheelchair ramps, including the Ramp, at the Premises at that time.

[Facility Services] performed its semi-annual staining services to the Ramp at the Premises on May 22, 2018 —five months prior to the Accident.

Maddock filed a third amended petition—the live pleading in this case—omitting the allegation that Buc-ee's and Facility Services failed to remedy or correct the unreasonably dangerous condition and failed to warn patrons, including Maddock, and adding the following: "In addition, for reasons that at this point are unclear, [Buc-ee's and Facility Services] then destroyed the available evidence by requesting that the ADA ramp be bead blasted; thereby destroying physical evidence

to the detriment of [Maddock]. Based on informant and belief, the actual destruction of the evidence was requested by [Buc-ee's] and carried out by [Facility Services]."

Maddock also filed a Motion for Spoliation Instruction or Other Appropriate Remedial Sanctions. Maddock asserted that three days after her accident, her husband informed the General Manager at Buc-ee's Cypress Store about Maddock's injuries. He told the General Manager that Maddock was injured and that she was considering pursuing a claim against Buc-ee's. The General Manager referred Maddock's husband to Buc-ee's Claims Department. Maddock alleged that on the same day, after her husband spoke to the General Manager, Buc-ee's and Facility Services decided to remove the stain from the ADA ramp at the Cypress Store. She alleged that the removal of the stain began at 10:52 p.m. on October 18, 2018 and was completed at 1:00 a.m. the following morning. Maddock claimed she first learned about the removal when she reviewed Facility Services' discovery production. Maddock argued that the stain was critical and essential evidence to her case. She argued that Buc-ee's and Facility Services' intentional removal of the stain prevented her expert from being able to examine the surface of the handicap ramp as it existed at the time she fell to measure its slip resistance. Maddock separately argued that contrary to Buc-ee's assertion in its Motion that "there is no evidence in the record that anyone had previously tripped or slipped on the ramp,"

the video Buc-ee's produced in discovery showed another Buc-ee's customer slipping on the same wet ramp just minutes before Maddock slipped and fell.

Maddock requested an evidentiary hearing on her spoliation motion to develop the record regarding Buc-ee's and Facility Services' alleged spoliation of evidence and to aid the trial court in determining the proper remedy. She also asked the trial court to grant a spoliation presumption or another appropriate remedial sanction, such as prohibiting Buc-ee's and Facility Services from arguing or introducing evidence that the ramp at Buc-ee's Cypress Store did not present an unreasonable risk of harm at the time of her fall or that Buc-ee's and Facility Services did not know or should not have known of the unreasonable risk of harm presented by the ramp.

In support of her spoliation motion, Maddock attached the video footage produced by Buc-ee's in discovery, her husband's sworn affidavit, Buc-ee's work order authorizing removal of the stain from the ramp at the Cypress Store, an excerpt from the deposition of Buc-ee's Operations Manager Richard Sebastian ("Sebastian"), Salsedo's sworn affidavit, and the affidavit of Maddock's expert, Russell Kendzior ("Kendzior").[1] In his affidavit, Kendzior testified:

> On October 15, 2018, Plaintiff slipped and fell on the wet surface of an ADA ramp at the Buc-ee's convenience store located at 27106 US-290, Cypress, TX 77433. The surface of the ADA ramp was coated with a

---

[1] Maddock later amended her spoliation motion.

8

paint/stain that became slippery and hazardous to foot traffic when wet or damp.

I am familiar with the Sherwin Williams paint/stain product that Defendants used on the surface of the ADA ramp. The paint/stain is not slip resistant, and it may become slick and hazardous to foot traffic when damp or wet. In my opinion, when damp or wet the painted/stained surface of the ADA ramp posed an unreasonable risk or harm to individuals such as Plaintiff who walked over the surface of ramp. Defendants knew or should have known that the painted/stained surface of the ADA ramp was slippery and hazardous to foot traffic when wet or damp. Defendants made no effort to reduce or eliminate the hazard prior to Plaintiffs fall [] and did not warn individuals such as Plaintiff of the risk.

Maddock also responded to Buc-ee's no-evidence motion for summary judgment, arguing she had presented sufficient evidence to raise a fact issue on the elements of her premises liability claim. She asserted that Buc-ee's had actual knowledge that when wet, the stained surface of the handicap ramp was slick and dangerous to foot traffic because Buc-ee's had video footage of a customer slipping on the wet ramp moments before Maddock slipped and fell. Maddock argued that the stained surface of the ramp had been present for about five months before her fall, thereby giving Buc-ee's ample time to discover the hazardous condition and remedy it. Maddock pointed to Kendzior's affidavit as evidence supporting her argument that the ramp, when wet, posed an unreasonable risk of harm to customers. Maddock attached Salsedo's affidavit, Buc-ee's video footage, Kendzior's affidavit, and her first amended spoliation motion to her response to Buc-ee's Motion.

9

Maddock also responded to Facility Services' combined motion for summary judgment arguing she had produced sufficient evidence to raise a fact issue on the elements of her claim. Maddock argued that the stained surface of the handicap ramp had been present for about five months prior to Maddock's fall, giving Facility Services ample time to discover the hazardous condition and remedy it. She argued that, when wet, the stained surface of the ramp posed an unreasonable risk of harm to foot traffic. In support of her summary judgment response, Maddock presented Salsedo's affidavit, Buc-ee's video footage, Kendzior's affidavit, and her first amended spoliation motion.

In response to Maddock's amended spoliation motion, Facility Services argued that because removal of the stain from the ramp was a subsequent remedial measure, evidence of the removal was inadmissible under Texas Rule of Evidence 407. Facility Services further argued that Maddock was not harmed by removal of the stain, and that Facility Services did not spoliate evidence as it neither had a duty to preserve evidence nor did it negligently or intentionally breach any such duty. In its reply in support of its combined summary judgment motion, Facility Services also argued that Maddock failed to come forward with evidence sufficient to create a fact issue over whether (1) the stain constituted an unreasonable risk of harm, and (2) Facility Services knew or should have known of the alleged unreasonable risk of harm. Facility Services objected to portions of Kendzior's affidavit, attached as an

exhibit to Maddock's summary judgment response, as conclusory, and to Maddock's amended spoliation motion on the grounds that pleadings are not proper summary evidence.

In its reply in support of its no-evidence motion for summary judgment, Buc-ee's argued that Maddock failed to show that an unreasonably dangerous condition existed and, if such a condition existed, that Buc-ee's had actual or constructive knowledge of the hazard. Buc-ee's responded to Maddock's first amended spoliation motion, arguing the motion should be denied because (1) removal of the stain constitutes a subsequent remedial measure and is therefore inadmissible under Texas Rule of Evidence 407, and (2) Maddock was not harmed by the stain's removal.

The trial court held a hearing on Buc-ee's and Facility Services' motions for summary judgment and Maddock's first amended spoliation motion. Following the hearing, the trial court granted Buc-ee's and Facility Services' no-evidence motions for summary judgment. The trial court did not expressly rule on Maddock's amended spoliation motion. This appeal ensued.

**Discussion**

Maddock presents three issues on appeal. In her first and second issues, she contends she presented sufficient summary judgment evidence raising a fact issue over whether Buc-ee's and Facility Services had constructive knowledge of the

alleged dangerous condition, and thus the trial court erred in granting a no-evidence summary judgment to Buc-ee's and Facility Services on her premises liability claim. In her third issue, Maddock argues the trial court abused its discretion by refusing to grant a spoliation presumption in her favor.

## A.    Summary Judgment Standard of Review

We review a trial court's ruling on a motion for summary judgment de novo. *See Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).   After an adequate time for discovery, a party may move for a no-evidence summary judgment on the ground that no evidence exists of one or more essential elements of the claim on which the adverse party bears the burden of proof at trial.  TEX. R. CIV. P. 166a(i); *see LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006).  The burden then shifts to the nonmovant to produce evidence raising a genuine issue of material fact on the challenged elements.  TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).  A no-evidence summary judgment is improper if the nonmovant brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact.  *Forbes, Inc. v. Granada Bioscis., Inc.*, 124 S.W.3d 167, 172 (Tex. 2003).  "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact."  *Id.* at 172 (quoting *King Ranch v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (internal quotations omitted)).  "More than a scintilla of evidence exists if it would allow

12

reasonable and fair-minded people to differ in their conclusions." *Id.* Unless the nonmovant raises a genuine issue of material fact, the trial court must grant summary judgment. *See* TEX. R. CIV. P. 166a(i).

A party who files a no-evidence motion for summary judgment under Rule 166a(i) essentially requests a pretrial directed verdict. *Mack Trucks*, 206 S.W.3d at 581. We review the evidence presented by the summary judgment record in the light most favorable to the party against whom summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Id.* at 582 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)).

## B. Premises Liability Claim

A premises owner owes its invitees a duty to protect them from, or warn them of, dangerous conditions on the premises the owner knows about or, in the exercise or reasonable care, should know about. *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002).[2] The standard of care required of the owner towards its invitees is the ordinary care that a reasonably prudent person would exercise under the same or similar circumstances. *Farrar v. Sabine Mgmt. Corp.*, 362 S.W.3d 694,

---

[2] An invitee is "one who enters on another's land with the owner's knowledge and for the mutual benefit of both." *Hillis v. McCall*, 602 S.W.3d 436, 440 n.6 (Tex. 2020) (quoting *Rosas v. Buddie's Food Store*, 518 S.W.2d 534, 536 (Tex. 1975)). The parties agree that Maddock was an invitee.

13

699 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983)). While a premises owner is not an insurer of its invitees' safety, it must protect invitees from conditions on the property that present an unreasonable risk of harm. *Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 162–63 (Tex. 2007).

To prevail on a premises liability claim against a property owner, an injured invitee must establish that (1) a premises condition created an unreasonable risk of harm to the invitee, (2) the owner knew or reasonably should have known of the condition, (3) the owner failed to exercise ordinary care to protect the invitee from the danger, and (4) the owner's failure was a proximate cause of injury to the invitee. *Fort Brown Villas III Condo. Ass'n, Inc. v. Gillenwater*, 285 S.W.3d 879, 883 (Tex. 2009); *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000). The threshold requirement in a premises liability claim is the existence of actual or constructive knowledge of an unreasonably dangerous condition on the premises. *See Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex. 1996). As a general rule, to prevail on a premises liability claim, "a plaintiff must prove that the defendant possessed—that is, owned, occupied, or controlled—the premises where [the] injury occurred." *Allen Keller Co. v. Foreman*, 343 S.W.3d 420, 426 (Tex. 2011) (quoting *Wilson v. Tex. Parks & Wildlife Dept.*, 8 S.W.3d 634, 635 (Tex. 1999).

## C.     Doctrine of Spoliation

Spoliation of evidence occurs when a party (1) deliberately destroys or fails to preserve relevant evidence or (2) when it fails to produce relevant evidence or to explain its non-production.  *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 721 (Tex. 2003).  Under the first scenario, a party who deliberately destroys evidence "is presumed to have done so because the evidence was unfavorable to its case."  *Id.* Under the second scenario, "the presumption arises because the party controlling the missing evidence cannot explain its failure to produce it."  *Id.* at 722.

Whether a party has engaged in spoliation of evidence is a preliminary evidentiary question for the court and not for a jury.  *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 20 (Tex. 2014).  The "spoliation analysis involves a two-step judicial process: (1) the trial court must determine, as a question of law, whether a party spoliated evidence, and (2) if spoliation occurred, the court must assess an appropriate remedy."  *Id.* at 14.  To find that a party spoliated evidence, "the court must find that (1) the spoliating party had a duty to reasonably preserve evidence, and (2) the party intentionally or negligently breached that duty by failing to do so." *Id.*

Trial courts have broad discretion to address the spoliation of evidence, including "measures ranging from a jury instruction on the spoliation presumption to, in the most egregious cases, death penalty sanctions." *Trevino v. Ortega*, 969

15

S.W.2d 950, 953 (Tex. 1998). The remedy "must relate directly to the conduct giving rise to the sanction and may not be excessive." *Brookshire Bros.*, 438 S.W.3d at 14. Key considerations in fashioning a remedy are the level of culpability of the spoliating party and the degree of prejudice suffered by the non-spoliating party, if any. *Id.*

The doctrine of spoliation can apply in a summary judgment context. *See Clark v. Randalls Food*, 317 S.W.3d 351, 356 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). If a trial court concludes that the movant in a motion for summary judgment engaged in spoliation of evidence, the court may, but is not required to, draw an inference that the evidence would have been favorable to the non-movant. *Adobe Land Corp. v. Griffin, L.L.C.*, 236 S.W.3d 351, 356 (Tex. App.—Fort Worth 2007, pet. denied). When a trial court grants summary judgment against a party arguing spoliation, it is implied that the trial court denied the request for a spoliation presumption. *See id.* at 356–57 (presuming trial court considered and rejected plaintiffs' request for spoliation presumption where plaintiffs raised issue of entitlement to presumption in response to defendant's no-evidence summary judgment motion and trial court nonetheless granted no-evidence motion) (citing *Aguirre v. S. Tex. Blood & Tissue Ctr.*, 2 S.W.3d 454, 457 (Tex. App.—San Antonio 1999, pet. denied)). A ruling denying a spoliation request is reviewed for abuse of discretion. *Id.* at 357. To determine whether a trial court abused its discretion, we

16

must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003).

Because Maddock argued in her summary judgment responses that Buc-ee's and Facility Services' summary judgment motions should be denied because they intentionally spoliated evidence crucial to her claims, and the trial court nevertheless granted summary judgment in favor of Buc-ee's and Facility Services, we presume the trial court considered and rejected Maddock's amended spoliation motion. Thus, our review of the trial court's order granting summary judgment is somewhat modified. *Rico v. L-3 Commc'ns Corp.*, 420 S.W.3d 431, 437 (Tex. App.—Dallas 2014, no pet.). We first review the denial of Maddock's amended spoliation motion for an abuse of discretion. *Id.* If we find the trial court abused its discretion by denying Maddock's request for a spoliation presumption, the failure to apply the presumption was improper. *See Clark*, 317 S.W.3d at 356. If, however, we conclude the trial court did not abuse its discretion by denying the spoliation finding, we proceed under the established summary judgment standards of review to determine whether, without the spoliation presumption, summary judgment was proper. *Id.* In light of this framework, we address Maddock's third issue first.

## D. Denial of Spoliation Presumption

Maddock contends the trial court abused its discretion by impliedly denying her request for a spoliation presumption. She argues that because Buc-ee's and Facility Services engaged in spoliation of evidence, the trial court should have inferred both the existence of a condition which posed an unreasonable risk of harm and that Buc-ee's and Facility Services knew of the dangerous condition.

To determine whether a spoliation sanction or presumption is justified, courts consider whether (1) there was a duty to preserve evidence, (2) the alleged spoliator breached that duty, and (3) the spoliation prejudiced the non-spoliator's ability to present its case or defense. *Id.* (citing *Adobe Land Corp.*, 236 S.W.3d at 357; *Offshore Pipelines, Inc. v. Schooley*, 984 S.W.2d 654, 666 (Tex. App.—Houston [1st Dist.] 1998, no pet.)). The party alleging spoliation bears the burden of establishing the alleged spoliator had a duty to preserve the evidence in question and breached that duty. *See Brookshire Bros.*, 438 S.W.3d at 20.

### 1. Duty to Preserve Evidence

The duty to preserve evidence "arises only when a party knows or reasonably should know that there is a substantial chance that a claim will be filed and that evidence in its possession or control will be material and relevant to that claim." *Id.* (quoting *Johnson*, 106 S.W.3d at 722).

### a.  Knowledge of Claim

To prevail on the first prong, Maddock must show that Buc-ee's and Facility Services knew or reasonably should have known there was a substantial chance she would file a claim.  "[A] 'substantial chance of litigation' arises when 'litigation is more than merely an abstract possibility or unwarranted fear.'"  *Id.* (quoting *Nat'l Tank Co. v. Brotherton*, 851 S.W.2d 193, 204 (Tex. 1993)).

### i.  Facility Services

Facility Services argues that the evidence affirmatively shows it had no duty to preserve the stain applied to the handicap ramp at the Cypress Store.  It asserts that the only evidence in the record on this issue establishes Facility Services neither knew, nor should it have reasonably known, there was a substantial chance a claim would be filed.  In support of its argument, Facility Services points to the affidavit testimony of Salsedo, the Co-Owner and President of Facility Services, stating that Facility Services "was never made aware of any complaints or injuries related to the Ramp or the stain," and that no Facility Services employee was present at the Cypress Store when Maddock slipped and fell.  Facility Services also asserts that the only communication it received concerning the ramp was Buc-ee's work order dated October 15, 2018, directing it to remove the stain from four ramps at the Cypress Store on October 18, 2018.

In her amended spoliation motion, Maddock argued that the mere severity of the incident and the seriousness of her injury triggered Buc-ee's and Facility Services' duty to preserve the evidence. *See In re Advanced Powder Sols., Inc.*, 496 S.W.3d 838, 854 (Tex. App.— Houston [1st Dist.] 2016, no pet.) ("When a reasonable person would conclude from the severity of an accident or other circumstances that a substantial chance of litigation exists, a duty to preserve evidence arises."). While this may be true, Maddock did not produce any evidence establishing Facility Services knew Maddock had slipped and fallen on the ramp, injuring herself. We thus conclude that Maddock did not satisfy her burden to establish Facility Services had a duty to preserve the evidence in question. *See Brookshire Bros.*, 438 S.W.3d at 20. The trial court did not abuse its discretion in denying Maddock's request for a finding Facility Services spoliated evidence.

We overrule Maddock's third issue as it relates to Facility Services.

### ii. Buc-ee's

In support of her contention that Buc-ee's knew there was a substantial chance a claim would be filed, Maddock points to her husband's affidavit attached to her amended spoliation motion, which she filed as an exhibit to her summary judgment response. In his affidavit, Maddock's husband testified that three days after Maddock slipped and fell on the ramp at the Cypress Store, he met with the General Manager of the store to discuss the incident. During the meeting, he informed the

General Manager that he and his wife were considering pursuing a claim against Buc-ee's due to the severity of Maddock's injuries, and the General Manager referred him to the company's Claims Department. The next day, Maddock's husband emailed Buc-ee's Claims Department to inform them of Maddock's injury and to determine whether a mutually agreeable solution could be reached to avoid litigation. A copy of the email was attached to the affidavit submitted by Maddock's husband.

Buc-ee's does not refute or otherwise address this affidavit testimony in its response to Maddock's amended spoliation motion or in its appellate brief. Because the undisputed affidavit testimony establishes Buc-ee's knew there was a substantial chance Maddock would file a claim, we conclude Maddock established the first prong of the duty analysis as it concerns Buc-ee's duty to preserve evidence. *See Johnson*, 106 S.W.3d at 722; *Clark*, 317 S.W.3d at 357 (concluding undisputed evidence showed plaintiff had established first prong of duty analysis where defendant acknowledged in its interrogatory answer that it knew substantial chance existed claim would be filed).

### b. Relevance of Material

To establish the second prong of the duty analysis for preservation of evidence, Maddock must show that Buc-ee's knew or should have reasonably known that the paint stain it removed from the ramp would be relevant to the

21

action. *See Johnson*, 106 S.W.3d at 722. "A party must preserve what it knows or reasonably should know is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, or is the subject of a pending discovery sanction." *Clark*, 317 S.W.3d at 357 (citing *Trevino*, 969 S.W.2d at 957 (Baker, J., concurring)). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. If there is some logical connection either directly or by inference between the evidence and a fact to be proved, the evidence is relevant. *See Serv. Lloyds Ins. Co. v. Martin*, 855 S.W.2d 816, 822 (Tex. App.—Dallas 1993, no writ).

In her amended spoliation motion, Maddock contended Buc-ee's and Facility Services knew or reasonably should have known that the paint stain used on the ramp would be relevant to her action. She argued that the stain on the ramp was critical and essential evidence in her case and that its removal prevented her expert from being able to examine the surface of the ramp and measuring the slip resistance of its surface as it existed at the time she fell.

Buc-ee's did not address this second prong of the duty analysis in its response to Maddock's amended spoliation motion; that is, it did not argue that it neither knew nor reasonably should have known that the paint stain used on the ramp would be

22

relevant to the case. Instead, Buc-ee's contends that even though a duty to preserve evidence arises when a substantial chance of litigation exists, this duty is not boundless, but rather limited by what is reasonable under the circumstances. In support of its contention, Buc-ee's cites *Conderman v Rochester Gas & Elec. Corp.*, 693 N.Y.S.2d 787 (N.Y. App. Div. 1999) and *Allen v. Blanchard*, 763 So.2d 704 (La. Ct. App. 2000) to argue that a spoliation finding is not warranted where, as here, a subsequent remedial measure is taken to promote safety and prevent future accidents.[3]

In *Conderman*, the plaintiffs sustained injuries when their vehicles were struck by falling utility poles. *See Conderman*, 693 N.Y.S.2d at 788. The defendant dispatched emergency crews to the scene who, upon arrival, cut the poles into four-foot lengths so they could be removed to the side of the road to allow vehicles to pass. *See id.* The plaintiffs filed suit and later moved for summary judgment on the issue of liability based on spoliation of critical evidence. *See id.* After initially granting the portion of the plaintiffs' motion requesting a spoliation sanction against the defendants to prevent them from offering any evidence to rebut the presumption of negligence, the court modified its order and denied the plaintiffs' motion in its

---

[3] As an initial matter, we note we are not bound to follow decisions from other jurisdictions. *See Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993) (holding Texas courts are only obligated to follow decisions by higher Texas courts and United States Supreme Court). Notwithstanding, we consider the cited cases, but find them distinguishable.

entirety. *See id.* at 789. The court concluded that "[i]n the absence of pending litigation or notice of a specific claim, a defendant should not be sanctioned for discarding items in good faith and pursuant to its normal business practices." *Id.*

*Conderman* is distinguishable in several key respects. First, the court declined to impose a duty to preserve evidence because it concluded the defendants were responding to an emergency situation that affected public safety when they immediately rushed emergency workers to the scene in an effort to clear the roads and restore service to their customers within twenty-four hours. *See id.* Here, by contrast, three days passed between Maddock's accident and removal of the stain from the Cypress Store ramp. More importantly, the defendants in *Conderman* destroyed the evidence seventeen days before the plaintiffs filed a show cause order staying the defendant utility company from damaging or otherwise altering the utility poles and, thus, well before it knew or had reason to know that the plaintiffs intended to file a claim. *See id.* at 788. Here, Buc-ee's had the stain removed the same day and shortly after Maddock's husband informed the Cypress Store General Manager that Maddock was considering pursuing a claim against Buc-ee's due to the severity of her injuries.

Buc-ee's' reliance on *Allen* is similarly misplaced. In that case, a rodeo spectator sued an arena owner following his fall from the arena's bleachers after the welding on the railing failed. *See Allen*, 763 So.2d at 706. The trial court granted

summary judgment to the defendant. *See id.* On appeal, the court noted that the plaintiffs had raised the issue of spoliation of evidence at the summary judgment hearing. *See id*. at 709. Noting that "[t]he presumption of spoliation is not applicable when the failure to produce the evidence has a reasonable explanation," the court cited the defendant's testimony that he repaired the weld the day following the accident in order to get his arena back in working condition as quickly as possible. *See id.* The court further stated there was no evidence to suggest the defendant knew the plaintiffs would file suit seeking damages for his injuries. *See id.* Here, by contrast, the undisputed evidence shows that Buc-ee's knew there was a substantial chance a claim would be filed because Maddock's husband informed the Cypress Store General Manager that Maddock was considering pursuing a claim.

Based on the evidence, we conclude Buc-ee's knew that the stain on the ramp was relevant to the case as it bore directly on the issue of whether a dangerous condition existed on the ramp that created an unreasonable risk of harm to Maddock and other invitees, which is one of the elements Maddock must prove—and that Buc-ee's challenged in its summary judgment motion—to prevail on her premises liability claim. *See Martin*, 855 S.W.2d at 822 (stating that evidence is relevant if there is some logical connection either directly or by inference between evidence and fact to be proved); *see also Trevino*, 969 S.W.2d at 957 (Baker, J., concurring) (noting that party should preserve what it reasonably should know is likely to be

25

requested during discovery); TEX. R. EVID. 401 (stating evidence is relevant if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

The evidence shows that Buc-ee's knew of an impending claim and was aware the ramp stain as it existed at the time of Maddock's fall was relevant to her claim. We thus find that under the circumstances presented here, Buc-ee's had a duty to preserve evidence of the stain. *See Clark*, 317 S.W.3d at 358 (holding defendant had duty to preserve footage of events preceding plaintiff's fall because it was aware of impending claim and was aware that footage of events preceding fall was relevant to her claim).

### 2. Breach of Duty

Having concluded that Buc-ee's had a duty to preserve evidence of the stain, we must now determine whether Buc-ee's breached that duty. *See id.*; *Adobe Land Corp.*, 236 S.W.3d at 359. While parties need not take extraordinary measures to preserve evidence, they have a duty to exercise reasonable care in preserving potentially relevant evidence. *Clark*, 317 S.W.3d at 358; *Adobe Land Corp.*, 236 S.W.3d at 359. The burden of the prejudicial effects associated with the failure to preserve evidence is placed on the culpable spoliating party rather than the innocent

non-spoliating party. *Clark*, 317 S.W.3d at 358; *Adobe Land Corp.*, 236 S.W.3d at 359.

A spoliator can defend against an assertion of negligent or intentional destruction by providing other explanations to justify its failure to preserve evidence. *Clark*, 317 S.W.3d at 358; *Adobe Land Corp.*, 236 S.W.3d at 359. However, when a party's duty to preserve evidence arises before the destruction or when a policy is at odds with a duty to maintain records, a defendant's explanation will not excuse the obligation to preserve. *See Miner Dederick Constr., LLP v. Gulf Chem. & Metallurgical Corp.*, 403 S.W.3d 451, 466 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (concluding defendant's failure to preserve expansion joint could not be justified on basis that evidence was destroyed in ordinary course of business where record showed defendant's duty to preserve arose before it conducted repair); *Adobe Land Corp.*, 236 S.W.3d at 360 (concluding defendant's failure to preserve sample of herbicide batch could not be justified by defendant's explanation that it destroyed evidence pursuant to its corporate policies once plaintiffs filed suit) (citing *Trevino*, 969 S.W.2d at 957) (Baker, J. concurring); *In re Sw. Public Serv. Co.*, No. 13-19-00111-CV, 2020 WL 1887762, at *17 (Tex. App.—Corpus Christi-Edinburg Apr. 16, 2020, no pet.) (mem. op.) (holding relators' failure to preserve missing data could not be justified on basis that evidence was destroyed

in ordinary course of business where record showed relators' duty to preserve missing data arose before data was destroyed).

Buc-ee's argues that while it may have had a duty to preserve evidence of the stain, it also had a duty to take remedial action and repair any alleged defect of which it had knowledge to protect other customers on its premises. The evidence shows that Buc-ee's knew it had a duty to preserve evidence of the stain three days after Maddock fell because three days after the fall, Maddock's husband informed the Cypress Store General Manager that Maddock was considering pursuing a claim against Buc-ee's. The record also shows that Buc-ee's duty to preserve arose before it began removing the paint at 10:52 p.m. on October 18, 2018. Thus, Buc-ee's failure to preserve cannot be justified on the basis it destroyed the evidence as a subsequent remedial measure. Because Buc-ee's had a duty to preserve the stain before it destroyed it, we conclude Buc-ee's breached its duty to exercise reasonable care in preserving the evidence. *See Adobe Land Corp.*, 236 S.W.3d at 360.

### 3. Prejudice

The final step of our inquiry focuses on whether Buc-ee's spoliation prejudiced Maddock's ability to present her case. *See Clark*, 317 S.W.3d at 359; *Miner Dederick Const.*, 403 S.W.3d at 469; *Adobe Land Corp.*, 236 S.W.3d at 360. "[T]he spoliating party is [ ] free to attempt to show that . . . no prejudice" resulted from the "negligently destroyed evidence." *Trevino*, 969 S.W.2d at 958 (Baker, J.,

28

concurring).  In making this determination, we look to a variety of circumstances such as (a) the harmful effect of the missing evidence, and (b) the availability of other evidence to take the place of the missing information.  *Clark*, 317 S.W.3d at 359; *Adobe Land Corp.*, 236 S.W.3d at 360; *see also Trevino*, 969 S.W.2d at 958 (noting courts should consider whether destroyed evidence was cumulative of other competent evidence that party can use in place of destroyed evidence, and whether destroyed evidence supports key issues in case).

### a.      Harmful Effect of Missing Evidence

Having already determined that evidence of the stain removed from the ramp was relevant to Maddock's premises liability claim, we must address whether the failure to preserve the stain prejudiced Maddock's claim.  To determine whether a party was harmed by the spoliation of evidence, we consider "whether the destroyed evidence supports key issues in the case."  *Clark*, 317 S.W.3d at 359 (quoting *Trevino*, 969 S.W.2d at 958 (Baker, J., concurring)).

Maddock argued that the stain removed from the ramp was critical and essential evidence to her case.  She argued that Buc-ee's and Facility Services' intentional removal of the stain prevented her expert from being able to examine the surface of the ramp as it existed at the time she fell to measure its slip resistance.  While the trial court could have found that the destroyed evidence supported a key issue in the case—whether the condition posed an unreasonable risk of harm—it

could also reasonably have found that the missing evidence had no harmful effect on Maddock's case.

In his sworn affidavit attached to Maddock's response to Buc-ee's motion for summary judgment, Maddock's expert, Kendzior, testified:

> I am familiar with the Sherwin Williams paint/stain product that Defendants used on the surface of the ADA ramp. The paint/stain is not slip resistant, and it may become slick and hazardous to foot traffic when damp or wet. In my opinion, when damp or wet the painted/stained surface of the ADA ramp posed an unreasonable risk or harm to individuals such as Plaintiff who walked over the surface of ramp.

Kendzior's testimony that he was familiar with the stain Buc-ee's used on the ramp, that the stain is not slip resistant, and that the stained surface of the ramp posed an unreasonable risk of harm suggests that his inability to examine the stain as it existed on the day of the accident to measure its slip resistance was not necessary and thus did not prejudice Maddock's claim. Consequently, the trial court could reasonably have determined that removal of the stain was not harmful to Maddock's case. However, even if the trial court had concluded that the destroyed evidence supported a key issue in the case, it also had to consider whether the destroyed evidence was cumulative of other competent evidence Maddock could use in lieu of the destroyed evidence.

30

### b.     Availability of Other Evidence

In her amended spoliation motion, Maddock argued there was no alternative evidence to show the condition of the ramp on the day of her fall. Maddock argued that although Buc-ee's may assert the ramp was not slippery, Maddock has "no way of testing the accuracy" of that statement, and that this is a case "in which a mere description of what the evidence 'might have shown' is insufficient." We disagree.

The record shows that Maddock had access to other evidence which would have provided her with the same information she sought to obtain by having her expert examine the surface of the ramp to measure its slip resistance. In his affidavit, Salsedo testified that, in 2014, Buc-ee's asked him to remove the paint from all of the wheelchair ramps (at all/various Buc-ee's locations) and that Facility Services applied an ADA-compliant stain that matched the stain color requested by Buc-ee's at the premises. He testified that the same ADA-compliant stain has been applied to at least 29 Buc-ee's locations as well as to thousands of handicap ramps throughout Texas. Thus, Maddock's expert could have visited any one of Buc-ee's 28 other locations in Texas, where the same stain was applied to the stores' wheelchair ramps in the same year. Salsedo's testimony that Facility Services provided the same ADA-compliant services for Buc-ee's stores throughout Texas on the same periodic basis suggests that the stain used on the ramps at other Buc-ee's stores would be in the same condition as the stain on the ramp at the Cypress Store. The record does

not show that Maddock requested to test the stain on the ADA ramps at any other of Buc-ee's locations throughout Texas, where Facility Services had applied the same stain. And, contrary to Maddock's assertion that she had no means to confirm the accuracy of Buc-ee's assertion that the ramp at the Cypress Store was not slippery, she could have deposed a representative from Facility Services to attempt to refute Salsedo's affidavit testimony or taken other measures to establish the condition of the ramp. Indeed, Maddock's counsel acknowledged the existence of other available means to establish the condition of the ramp, including depositions and testing:

> **The Court**: Mr. Bickham, what is the evidence of all of this? Is all you have right now this video?
>
> **[Maddock's Counsel]**: With regard to the constructive knowledge, Judge?
>
> **The Court**: To all of it. I mean, there—yeah, to knowledge, to—yeah, to all of it. I mean, if I denied these motions for summary judgment and we came down here to trial next week, what are you going to tell the jury other than, "She fell. She slipped on a wet ramp"?
>
> **[Maddock's Counsel]**: *Well, obviously, we'd have many more depositions completed. And frankly, if we get past these summary judgments, we may want to do some testing.*
>
> My concern from the beginning has been there is no way to replicate the condition of the ramp on the day—(audio distortion) as it was on the day of this fall. And that's been, you know, obviously— like you said, they took us out at the knees.
>
> **The Court**: They may have taken you out at the knees, but I don't see that you're doing anything else to try to work around it.

(Emphasis added).

32

Maddock also had access to the Cypress Store's surveillance videotape showing that a customer slipped on the same ramp less than two minutes before Maddock slipped and fell in order to show the condition of the stained ramp. This evidence, which Buc-ee's produced in discovery, constitutes other competent evidence showing the condition of the stained ramp at the time of the fall.

We conclude the trial court did not abuse its discretion by finding that no prejudice resulted from Buc-ee's failure to preserve evidence of the stain.[4] *See, e.g., Ordonez v. M.W. McCurdy & Co.*, 984 S.W.2d 264, 274 n.13 (Tex. App.— Houston [1st Dist.] 1998, no pet.) (finding no abuse of discretion in denial of spoliation instruction where evidence showed logbooks were disposed of pursuant to company policy and missing data was not shown to be harmful). We thus hold the trial court did not abuse its discretion in refusing to grant a spoliation finding against Buc-ee's. We overrule Maddock's third issue as it relates to Buc-ee's.

Because we have concluded that the trial court did not abuse its discretion by denying the spoliation finding as to Facility Services and Buc-ee's, we proceed under the established summary judgment standard of review to determine whether,

---

[4] Even if the trial court had concluded the spoliation of evidence prejudiced Maddock's ability to establish the existence of a dangerous condition, summary judgment would have nonetheless been proper because there was no evidence of actual or constructive knowledge as discussed below.

without the presumption, summary judgment was proper.  *See Clark*, 317 S.W.3d at 356.

## E.  Propriety of Summary Judgment

In her first issue, Maddock contends the summary judgment evidence raised a fact issue over whether Buc-ee's and Facility Services had constructive knowledge of the alleged dangerous condition.  In her second issue, she argues the trial court erred in granting no-evidence summary judgment to Buc-ee's and Facility Services on her premises liability claim.  Because these issues overlap, we address them together.

### 1.  Facility Services

In its no-evidence motion, Facility Services challenged the first and second elements of Maddock's premises liability claim.[5]  To avoid summary judgment, Maddock was therefore required to present more than a scintilla of evidence that the alleged condition of the ramp created an unreasonable risk of harm and that Facility Services had actual or constructive knowledge of the dangerous condition.  *See Fort Brown Villas*, 285 S.W.3d at 883; *CMH Homes*, 15 S.W.3d at 99.

---

[5]  In its brief on appeal, Facility Services argues, among other things, that it was not in control of the premises where the injury occurred.  It did not, however, present this ground in its summary judgment motion and therefore the trial court could not have granted summary judgment to Facility Services on this ground.  *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009) (stating trial court may not grant summary judgment on grounds not presented in motion).

The threshold requirement in a premises liability claim is the existence of actual or constructive knowledge of an unreasonably dangerous condition on the premises. *See Motel 6 G.P.*, 929 S.W.2d at 3. A condition poses an unreasonable risk of harm when there is a "sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *Hall v. Sonic Drive-In of Angleton, Inc.*, 177 S.W.3d 636, 646 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (quoting *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002)). "Foreseeability in this context 'does not require that the exact sequence of events that produced an injury be foreseeable.'" *Id.* Instead, only the general danger must be foreseeable." *Id.* A condition will not be deemed unreasonably dangerous simply because it is not foolproof. *Brinson Ford*, 228 S.W.3d at 163. A plaintiff may prove notice by establishing that the defendant actually knew the condition was dangerous or that it is more likely than not that the condition existed long enough to give the owner a reasonable opportunity to discover it. *See Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002). Evidence of a similar injury or complaint caused by the condition is probative on the questions of whether the condition posed an unreasonable risk of harm and notice. *See Farrar*, 362 S.W.3d at 700.

### a. Unreasonable Risk of Harm

In her summary judgment response, Maddock argued that the stained surface of the ramp at the Cypress Store, when wet, posed an unreasonable risk of harm to foot traffic. In support of her argument, Maddock points to her expert's affidavit testimony and the video footage produced by Buc-ee's in discovery showing another customer slipping on the same ramp moments before Maddock fell.[6]

"The relevant standard for an expert's affidavit opposing a motion for summary judgment is whether it presents some probative evidence of the facts at issue." *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996). Conclusory statements in affidavits are not competent evidence to support a summary judgment. *Frank's Int'l, Inc. v. Smith Int'l, Inc.*, 249 S.W.3d 557, 566 (Tex. App.—Houston [1st Dist.] 2008, no pet.). A conclusory statement is one that does not provide the underlying facts to support the conclusion. *Id.*; *see also Ryland Group*, 924 S.W.2d at 122 (concluding expert's affidavit stating use of untreated lumber for deck support amounted to intentional or willful misconduct by builder was insufficient summary judgment evidence to raise fact issue where affidavit made no claim and offered no

---

[6] The video footage is not part of the appellate record. However, the parties discussed the video at the summary judgment hearing and Buc-ee's counsel stated several times during the hearing that the footage showed a customer slipping 1 minute and 22 seconds before Maddock's slip and fall. Maddock's counsel did not dispute the accuracy of these statements at any time during the hearing.

evidence that contractor had actual knowledge that untreated lumber was used or that such use was intentional).

In his affidavit, Kendzior testified:

On October 15, 2018, Plaintiff slipped and fell on the wet surface of an ADA ramp at the Buc-ee's convenience store located at 27106 US-290, Cypress, TX 77433. The surface of the ADA ramp was coated with a paint/stain that became slippery and hazardous to foot traffic when wet or damp.

I am familiar with the Sherwin Williams pain/stain product that Defendants used on the surface of the ADA ramp. The paint/stain is not slip resistant, and it may become slick and hazardous to foot traffic when damp or wet. In my opinion, when damp or wet the painted/stained surface of the ADA ramp posed an unreasonable risk or harm to individuals such as Plaintiff who walked over the surface of the ramp. Defendants knew or should have known that the painted/stained surface of the ADA ramp was slippery and hazardous to foot traffic when wet or damp. Defendants made no effort to reduce or eliminate the hazard prior to Plaintiff's fall and did not warn individuals such as Plaintiff of the risk.

Kendzior's statements are not competent summary judgment evidence. His affidavit does not set forth any underlying facts to support his conclusion that the stained ramp posed an unreasonable risk of harm to Buc-ee's customers. He does not state that he inspected the stained ramp at the Cypress Store, reference any testing of the product or its application at any location, including at any of the 28 other Buc-ee's locations where the same stain has been used, provide or refer to any literature regarding the need for any additive or special procedure for applying the stain, or attach any other documentation to support his opinion. Because he provides no

37

underlying facts to support his conclusion that the ramp posed an unreasonable risk of harm, these conclusory statements are insufficient to raise a genuine issue of material fact on this element of Maddock's premises liability claim. *See Tatsch v. Chrysler Group, LLC*, No. 04-13-00757-CV, 2014 WL 6808637, at *5 (Tex. App.—San Antonio Dec. 3, 2014, pet. denied) (mem. op.) (concluding plaintiff's affidavit statements that he complied with manufacturer's recommendations in performing maintenance on truck where affidavit did not contain underlying facts to establish what constituted manufacturer's recommended maintenance scheme were conclusory and insufficient to raise issue on breach of warranty claim); *Trejo v. Laredo Nat. Bank*, 185 S.W.3d 43, 51 (Tex. App.—San Antonio 2005, no pet.) (affirming summary judgment on plaintiff's negligence claims where conclusory affidavit failed to set forth facts supporting what severe injuries plaintiff allegedly suffered from teller machine closing on her hand and how her injuries were exacerbated by bank's alleged failure to assist her); *City of San Angelo Fire Dep't v. Hudson*, 179 S.W.3d 695, 701 n.6 (Tex. App.—Austin 2005, no pet.) ("Because the affidavit does not indicate how Harrington made the assessment that the fire truck did not use its brakes at all when entering the intersection, we agree that the conclusory statement is not competent summary judgment evidence and strike it.").

Facility Services argues that Maddock's reliance on the video footage showing another customer slipping on the same ramp moments before Maddock fell

also fails to raise a genuine issue of material fact as to whether the stained ramp posed an unreasonable risk of harm to Buc-ee's customers. This is so, it argues, because the mere occurrence of a previous accident is not evidence of an unreasonably dangerous condition.

"[E]vidence of other falls or near falls attributable to the same conditions is recognized as probative evidence in determining whether such condition presents an unreasonable risk of harm . . . ." *Farrar*, 362 S.W.3d at 702 (quoting *Klorer v. Block*, 717 S.W.2d 754, 760 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.)). Here, it is undisputed that Maddock and another customer slipped on the same stained wheelchair ramp, which was wet from the drizzle, within less than two minutes of one another. While it is true that this evidence is not conclusive, it is probative of the fact that the stained ramp was unreasonably dangerous. *See id.* (citing *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 754 (Tex.1970)). We conclude this evidence raises a fact question as to whether the condition presented an unreasonable risk of harm. *See Farrar*, 362 S.W.3d at 702 ("When, as in this case, there is evidence that the similar slips (both Farrar and the man checking the building's fire alarm system complained that they slipped on the painted wheelchair ramp) arose out of the same inanimate cause or condition (both slipped on the painted wheelchair ramp when it was wet from rain), such evidence raises a fact question as to whether the condition presents an unreasonable risk of harm."). Maddock presented more

39

than a scintilla of evidence raising a question of material fact as to whether the stained ramp created an unreasonable risk of harm.

### b.      Knowledge of the Condition

To avoid summary judgment, Maddock was also required to present evidence that Facility Services had actual or constructive knowledge of the allegedly dangerous condition. *See Fort Brown Villas*, 285 S.W.3d at 883; *CMH Homes*, 15 S.W.3d at 99. In her response to Facility Service's summary judgment motion, Maddock argued that the condition had been present for about five months before she slipped and fell and Buc-ee's and Facility Services therefore had ample time to discover the hazardous condition and remedy it. In support of her argument, Maddock points to Salsedo's affidavit.

Contrary to Maddock's assertion, Salsedo's affidavit does not show that Facility Services had any knowledge that the stained ramp would become unreasonably dangerous when wet. Salsedo testified that the stain was correctly applied, was fully compliant with ADA regulations, and was specifically intended to prevent slick surfaces and slip-and-falls. He further attested that Facility Services had no notice of any falls, injuries, or complaints attributable to the stain at any of the Buc-ee's locations prior to Maddock's injury, and that it had applied the same stain on thousands of other handicap ramps and was not aware of any falls or complaints related to the stain at those locations. Salsedo also testified that no

Facility Services employee was present at the Cypress Store on the day Maddock slipped and fell.

Viewing the evidence in the light most favorable to Maddock, we conclude there is no evidence that Facility Services knew or should have known that the stain it applied to the ramp at the Cypress store created an unreasonably dangerous condition. We hold that the trial court properly granted Facility Services' no-evidence motion for summary judgment. *See* TEX. R. CIV. P. 166(a)(i).

We overrule Maddock's first and second issues as they relate to Facility Services.

## 2. Buc-ee's

In its summary judgment motion, Buc-ee's challenged the first, second, and third elements of Maddock's premises liability claim. To avoid summary judgment, Maddock was therefore required to present more than a scintilla of evidence that the ramp condition created an unreasonable risk of harm, Buc-ee's had actual or constructive knowledge of the allegedly dangerous condition, and it failed to exercise ordinary care to protect the claimant from danger by failing to adequately warn the claimant of the condition and failing to make the condition reasonably safe. *See Fort Brown Villas*, 285 S.W.3d at 883; *CMH Homes*, 15 S.W.3d at 99.

As noted above, the threshold requirement in a premises liability claim is the existence of actual or constructive knowledge of an unreasonably dangerous

condition on the premises. *See Motel 6 G.P.*, 929 S.W.2d at 3. Because we have concluded that Maddock presented more than a scintilla of evidence to raise a genuine issue of material fact as to whether the stained ramp created an unreasonable risk of harm, we turn to the second element—whether Buc-ee's had actual or constructive knowledge of the allegedly dangerous condition.

Citing *Gregg v. Walgreen Co.*, 625 S.W.3d 636 (Tex. App.—Houston [14th Dist.] 2021, no pet.) and *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812 (Tex. 2002), Maddock argues that Buc-ee's had actual or constructive knowledge of the slippery ramp because Buc-ee's knew that water was on the ramp or, alternatively, water was on the ramp long enough to give Buc-ee's a reasonable opportunity to discover it. Maddock's reliance on these cases is unavailing. In those cases, the plaintiffs slipped and fell on a substance on the floor of the store—a puddle of water in *Walgreens* and a clear liquid in *Wal-Mart*—which itself created the allegedly dangerous condition. Here, by contrast, it is not water on the ramp which Maddock alleged was the dangerous condition but rather the stain on the ramp when wet. Therefore, whether Buc-ee's knew there was water on the ramp or that water was there long enough for Buc-ee's to discover it does not constitute evidence that Buc-ee's knew or should have known of the alleged dangerous condition.

Maddock also points to Buc-ee's surveillance video showing a customer slipping on the same ramp shortly before Maddock slipped and fell to argue that

42

Buc-ee's had knowledge of the dangerous condition. At the hearing, the parties addressed the video footage:

> [Maddock's counsel]: But the video, Judge, is perhaps the best evidence that a fact issue exists in this case, because minutes before Ms. Maddock slipped, another customer also slips on the ramp; however, he does not fall to the ground. He is able to catch himself. But it is literally like two or three minutes after it starts to rain, this other customer comes. He slips on it. He even turns around and looks to see what was going on. And then shortly thereafter, Ms. Maddock comes in and then she falls—
>
> . . . .
>
> [Buc-ee's counsel]: Our first contention is, No. 1, he has no evidence showing that Buc-ee's knew or should have known about this ramp. What he has presented in his reply and what he mentioned just a second ago to this Court was that, "Hey, there was a case where an individual slipped on this ramp."
>
> You have the video and the video shows that it occurred exactly one minute and 22 seconds prior to the plaintiff falling. In that regard, the gentleman was going to his vehicle. He never went back and told a Buc-ee's employee, nor is there any testimony whatsoever that a Buc-ee's employee was ever told about that. Therefore, there is no way Buc-ee's could have had knowledge about it.
>
> . . . .
>
> And in this case, the only thing we are aware of was one minute and 22 seconds. And there is nothing within that time frame that shows that Buc-ee's knew or should have known or had time to even learn about the slip and fall, about the slip. The only reason Buc-ee's became aware of the slip was once we preserved the video of the plaintiff falling, we discovered this individual that had slipped one minute and 22 seconds prior to the plaintiff.

The trial court later posed the following question to Maddock's counsel:

43

[The Court]: Let's even say that the cash register person had seen this guy slip two minutes before your client. There has to be a sufficient amount of time for them to have done something about it and two minutes isn't exactly sufficient. I mean, what other evidence do you have that they knew that this was a problem?

[Maddock's counsel]: Unfortunately, Your Honor, we don't. We don't at this time.

The video footage showing a customer slipping on the ramp 1 minute and 22 seconds before Maddock slipped and fell is not evidence showing that Buc-ee's knew or should have known that the stained ramp posed an unreasonable risk of harm. Maddock presented no evidence showing that anyone at Buc-ee's observed, or was otherwise aware, that the customer had slipped on the ramp less than two minutes before Maddock slipped and fell. There is also no evidence that the customer notified Buc-ee's that he had slipped or complained about the condition of the ramp.

Maddock's reliance on *Farrar v. Sabine Management Corp.*, 362 S.W.3d 694 (Tex. App.—Houston [1st Dist.] 2011, no pet.) and *Barlow v. Buc-ee's, Ltd.*, No. 01-20-00295-CV, 2021 WL 497236, at *1 (Tex. App.—Houston [1st Dist.] Feb. 11, 2021, pet. denied) (mem. op.) to support her argument that she raised a fact issue on the knowledge element of her claim does not carry the day. In *Farrar*, the plaintiff, a postal worker, sued the defendants for premises liability after he slipped and fell on the wet, recently painted wheelchair ramp at one of their properties. *See Farrar*, 362 S.W.3d at 698. The trial court granted the defendants' no-evidence summary

44

judgment motion, and the plaintiff appealed. *See id*. This Court reversed the trial court's grant of summary judgment, concluding that the evidence raised a fact issue as to whether the painted wheelchair ramp created an unreasonable risk of harm, the defendants knew of the condition, and the defendants failed to exercise reasonable care to reduce or eliminate any unreasonable risk of harm. *See id.* at 700–04. The summary judgment evidence showed, among other things, that after the plaintiff told the property manager that he had slipped and fallen on the wheelchair ramp, the manager told him that a man checking the building's fire alarm system had also slipped on the ramp earlier that morning. *See id.* at 698. We concluded that evidence showing that similar slips arose out of the same inanimate cause or condition raised a fact question as to whether the condition presented an unreasonable risk of harm and whether the defendants had notice of the defect. *See id.* at 700–02. Unlike the evidence in *Farrar*, there was no evidence here that Buc-ee's had knowledge of the earlier fall.

In *Barlow*, the plaintiff slipped and fell when he stepped on a painted stripe in the parking lot of the New Braunfels Buc-ee's store, injuring his leg. *See Barlow*, 2021 WL 497236, at *1. The product at issue in *Barlow*, however, was a Sherwin Williams low-voc acrylic traffic-marking paint that Buc-ee's used on its parking lot. Here, Salsedo testified that Facility Services applied H&C Colortop Water-Based Solid Color Concrete Solutions, an ADA-compliant stain, to the ADA ramp at the

45

Cypress Store as well as at 28 other Buc-ee's location. Maddock's reliance on *Barlow* to show that Buc-ee's had actual or constructive knowledge of the allegedly dangerous condition posed by the stained ramp at the Cypress Store is therefore unavailing.

We conclude Maddock failed to bring forth evidence that Buc-ee's knew or should have known of an unreasonably dangerous condition on its premises. We therefore hold that the trial court properly granted Buc-ee's no-evidence motion for summary judgment. *See* TEX. R. CIV. P. 166(a)(i).

We overrule Maddock's first and second issues as they relate to Buc-ee's.

## Conclusion

We affirm the trial court's judgment.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Kelly, Rivas-Molloy, and Guerra.